### MENDENHALL v. MENDENHALL

[No. 17,467. Filed February 7, 1946. Rehearing Denied March 5, 1946. Transfer Denied April 4, 1946.]

546

548

*Robert L. Carrico,* and *Dillon & Volstead,* all of Indianapolis, and *Garrison & Castor,* of Noblesville, for appellant.

*Cloe & Campbell,* of Noblesville, for appellee.

CRUMPACKER, J.—This case was erroneously appealed to the Supreme Court and by that court transferred here by virtue of § 4-217, Burns' 1933. It is an action for divorce instituted by the appellee through a complaint alleging cruel and inhuman treatment. Summons was issued but never served. The appellant, nevertheless, appeared generally and filed an application for suit and support money. This application was heard by the court and a temporary allowance made after which the appellant filed a cross-complaint in which she also prayed an absolute divorce. Upon trial of the cause the court rejected the appellant's case as set out in her cross-complaint and judgment went for the appellee on his complaint. In its decree the court quieted title in the appellee to certain real estate theretofore held by the parties as tenants by entireties and appointed a commissioner to convey the appellant's interest therein to the appellee. After her motion for a new trial was overruled the appellant filed a motion in which she asked the court to declare the entire proceedings null and void because she had not been served with summons, which fact, she asserts, left the court wholly without jurisdiction in the matter.

By this appeal the appellant asks us to decide whether or not (1) the trial court had jurisdiction to render

judgment; (2) the decision is sustained by suffici-- ent evidence; (3) the decision is contrary to law; (4) the trial court had authority and power to quiet title to real estate in a divorce action and to appoint a commissioner to convey the same to the appellee; (5) the trial court erred in overruling her motion to declare the entire proceedings null and void; and (6) the trial court erred in appointing his daughter as a special reporter of the cause without exacting bond and oath. Question No. 6, though extensively briefed by counsel for both parties, was expressly waived by the appellant in the oral presentation of her case to this court and we therefore pass the same without comment.

We are confronted with a preliminary question growing out of the somewhat unsatisfactory form or make up of the general bill of exceptions containing the evidence. Many exhibits are not inserted in their proper places but are attached to such bill of exceptions without reference to the order of their introduction or in connection with the testimony to which they pertain. To illustrate—"Defendant's Exhibit 6" was introduced and read in evidence as shown at page 335 of the transcript but appears at page 321 thereof. "Plaintiff's Exhibit 109 to 158" were introduced and read in evidence as appears at page 213, and many of them are merely folded into the transcript unattached and photostatic copies of certain deeds appear without the reporter's identification thereon. The appellee insists that a bill of exceptions, subject to such defects, does not bring all of the evidence into the record and therefore no question requiring a consideration of the evidence is before us. The reporter's certificate, however, authenticates the general bill as being a full, true and complete transcript of all the evidence

given in the case and no showing is made that any exhibit appearing therein is not what it purports to be. While we do not approve of the many irregularities in the transcript, we do not consider them sufficiently serious to warrant a disposition of this case without consideration, on the merits, of the various questions presented.

The appellant's challenge to the jurisdiction of the trial court is based on § 3-1211, Burns' 1933, which provides: "The trial of no cause for absolute or limited divorce shall be had or heard by any court until after the expiration of sixty (60) days from the date of the issue of such summons as shall have been duly served on the defendant spouse or from the date of the publication of the first notice to a non-resident defendant. Any trial had or decree rendered in any such case in less than such sixty (60) days shall be null and void." The appellant says that because she is a resident defendant and was not served with summons the court was powerless, under the express prohibition of the above statute, to hear and dispose of this case until she had been so served and then only after the expiration of 60 days from the date such summons was issued. We are unable to arrive at such conclusion. The act in question is purely procedural in nature and its principal purpose is to set up a so-called "cooling off period" during which courts cannot dispose of divorce cases even though they may have acquired jurisdiction of the person of the defendant. Having once acquired such jurisdiction in any manner recognized by law and the period of inhibition having expired, there seems to be no logical reason to render a court powerless to proceed because such jurisdiction was acquired in some other manner than by the service of summons. It is our opinion that any procedure

amounting to the legal equivalent of service of summons satisfies the requirements of the statute. In the case before us the appellant, upon learning of this action, employed counsel and in his company voluntarily appeared and submitted herself to the jurisdiction of the court. She asked the court for affirmative relief by her petition for suit and support money and invoked the jurisdiction of said court by vigorously prosecuting the cause of action set up in her cross-complaint. Having lost the decision she now seeks to repudiate the entire proceedings on the grounds that the court had no power to decide.

Were this an ordinary civil proceeding any court would pronounce her position untenable without hesitation. This is a suit for divorce, however, and the state, as the representative of society generally, is a third party to the litigation and the question arises as to whether the defendant can waive the service of summons and voluntarily submit her person to the jurisdiction of the court. In the case of *Willman* v. *Willman* (1877), 57 Ind. 500, while not an action for divorce, the decision turns on the question of jurisdiction of the person of the defendant in a divorce case and the court holds that such jurisdiction can be acquired in two ways: (1) "By the issuing and service of summons"; and (2) "by a voluntary appearance in court and a submission to its jurisdiction." The provision governing the issuance and service of process in divorce suits is found in § 3-1205, Burns' 1933. In construing this statute the court said in *Friebe* v. *Elder* (1914), 181 Ind. 597, 105 N. E. 151: "The statute contains no provision for the waiving of the issuance of process, and we hold that the instrument in question cannot be held to confer jurisdiction *in the absence of an appearance, or the issuance and service of process.*" (Our emphasis.)

In harmony with the purport of the above decisions we hold that jurisdiction over the person of a resident defendant in a divorce suit can be acquired by his voluntary appearance in court in person or by attorney and submission to the authority of such court, provided, however, summons has previously been ·issued. It necessarily follows that a *bona fide* general appearance by the defendant is the equivalent of service of summons and satisfies the requirements of the 60-day statute. (§ 3-1211, *supra.*) In the present case more than 60 days elapsed after the issuance of summons and before judgment. In the meantime the appellant appeared, in person and by counsel, submitted to the jurisdiction of the court and sought affirmative relief. The court's subsequent proceedings and decision are not void for lack of jurisdiction.

The appellant's contention that the decision is not sustained by sufficient evidence can be disposed of with little comment. She is charged with cruel and inhuman treatment which includes mental as well as physical cruelty. *Ringenberg* v. *Ringenberg* (1942), 110 Ind. App. 290, 38 N. E. (2d) 870. There is evidence tending to prove that she cursed the appellee frequently and called him names which we consider unnecessary to repeat. She told him in the presence of others that she was sorry she had married him and did so with no intention of being either a wife or a companion. She criticized him in the presence of their mutual friends, calling him a "dumbhead" and physically unclean. On one occasion she threw a vase at him which missed its mark but smashed a nearby lamp, and frequently she stayed out until 3 or 4 o'clock in the morning and occasionally all night. She took several trips to places unknown to the appellee during which she was gone for days and upon her return

refused to account for her absence. She invited and encouraged her former husband to visit the appellee's home frequently and she spent much time in his company. The over all result of the appellant's attitude and conduct toward the appellee was such that he was kept in a continual state of nervousness. Most of this evidence is vigorously disputed and appellant offers much testimony in explanation of her conduct and in support of charges in her cross-complaint. This testimony, however, the trial court saw fit to reject, which was strictly within its province to do and outside ours to disturb, and we cannot say, as a matter of law, that the evidence in support of the court's decision, as we have briefly reviewed it above, fails to show cruel and inhuman treatment.

The appellant's major contention in reference to the legality of the decision is based on the court's finding that the appellee is the owner of certain real estate held by the parties as tenants by entireties and appointing a commissioner to convey the appellant's interests therein to him. The appellant insists that upon divorce she became the owner of an undivided one-half of said real estate as a tenant in common with the appellee and that the court had no power to make any other disposition thereof. In support of this contention the appellant leans heavily on *Alexander* v. *Alexander* (1895), 140 Ind. 560, 49 N. E. 55. This was an action in which the appellee sought and recovered possession of certain real estate set off to her by a decree of divorce from her husband, the appellant. The real estate involved had theretofore been held by the husband and wife as tenants by entireties and while the action for its possession was pending on appeal the decision in the divorce case, which had also been appealed, was reversed. In deciding the appeal in the possession suit the court said that, the

decision in the divorce case having been reversed, there remained nothing upon which the appellee's right to possession could stand, as the relation of the parties had been restored to its original status as if no action for divorce had ever been begun between them. It was unnecessary for the court to go further but nevertheless we find in its decision the following language which seems to us to be *obiter dictum:* "It appears that in the divorce case the trial court undertook, through the medium of a commissioner, to divide between the parties severally these and other lands theretofore held by them by entireties. Such action, it seems to us, was altogether unwarranted. Unless the parties themselves, by their own voluntary deeds, chose to convey to one another the lands held by them, in such manner as they might think best, with a view to the equitable division of their property, the court could not, by the aid of a commissioner, or otherwise, make such division for them as an accompaniment of their divorce proceedings. The only action in relation to property that might be taken by the court, was the giving of a sum in gross as alimony to the wife out of the husband's estate."

Considering the above excerpt from the Alexander decision as *obiter dictum,* we deem it merely advisory and believe that it should yield to any recognized rule of law that will more nearly affectuate the equities of the present case (see *Sharpe* v. *Baker* (1912), 51 Ind. App. 547, 96 N. E. 627). Such a rule was announced by the Supreme Court of Indiana in the case of *Walker* v. *Walker* (1898), 150 Ind. 317, 328, 50 N. E. 68, from which we quote as follows: "Where the wife proves recreant to her marriage obligations, and has destroyed the marital union by acts of adultery or other gross misconduct, and her husband is thereby entitled to a decree of divorce, the court granting the

same, has the discretionary power, and, under proper circumstances warranting the same, will generally exercise it, and allot to the injured husband such a portion of the property or means which he had settled upon the wife as will place him in the position, to some extent at least, which he would have occupied had the union continued." This court, guided by the above decision, announced the same rule in almost identical language in the cases of *Keaton* v. *Keaton* (1928), 87 Ind. App. 39, 41, 158 N. E. 25; *Swift* v. *Swift* (1923), 79 Ind. App. 199, 203, 137 N. E. 568; *Blagetz* v. *Blagetz* (1941), 109 Ind. App. 662, 37 N. E. (2d) 318; and *Radabaugh* v. *Radabaugh* (1941), 109 Ind. App. 350, 35 N. E. (2d) 114.

The evidence most favorable to the court's exercise of its discretion in allotting the real estate in question to the appellee tends to prove that he had owned the same, with title in his own name, for many years prior to his marriage to the appellant. He had lived there 33 years prior to such marriage on May 10, 1942, and immediately thereafter the appellant became insistent in her demand that title to the property be put in both their names so that if anything happened to the appellee she would be protected. Her constant importunities bore fruit and on May 26, 1942, by a series of deeds, wholly without consideration save the mutual love and affection ordinarily existing between husband and wife, the entireties estate upon which the appellant relies was created. From that moment the attitude of the appellant toward the appellee changed and she forthwith launched into a course of conduct which the trial court found to be cruel and inhuman in its relation to the appellee. The appellant brought no property of consequence to the marriage and in fact had been given money by the appellee to pay her pre-nuptial debts. In

16 days she acquired an entirety interest in real estate which the evidence discloses was then and is now worth from 20 to 25 thousand dollars and immediately thereafter became recreant to her marriage vows. To the trial court, which found such to be the facts, it seemed unconscionable that the appellant should be declared the owner of an undivided one-half of the property so acquired and to us, who must accept the facts so found, it is inconceivable that the trial court was without power to do equity by the return of the property to the appellee. Whether or not a commissioner should have been appointed we do not decide. Having concluded that the trial court had power to do equity as above indicated, it matters not what instrumentality was chosen to effectuate the purpose and any error predicated upon the use of a commissioner, if error at all, was harmless.

In its decree the court ordered the appellant to return to the appellee certain U. S. War Bonds which he had purchased and caused to be issued payable to himself and wife jointly. The appellant contends that, even though the consideration paid for said bonds was the separate property of the appellee, it is presumed that he intended to make her an absolute gift of one-half interest therein. We recognize this to be the general rule, *Radabaugh* v. *Radabaugh, supra,* but such presumption, of course, vanishes in the face of direct evidence to the contrary. The evidence most favorable to the appellee on this point indicates that he never intended his wife to have any present vested interest in the bonds in question, during his lifetime. He bought them out of his separate estate and retained possession of them until they were removed by the appellant from a strongbox without his knowledge and to which box she had gained access without his free-will consent. On these facts we hold that there was no delivery;

actual or constructive, and that the appellant had no vested interest in the bonds in controversy and the court was perfectly free to make such disposition of them between the parties as it concluded would meet the ends of justice.

The appellant's contention that the trial court erred in overruling her motion to declare these entire proceedings null and void is based solely on the fact that summons was not served upon her as required by the so-called 60-day divorce statute. We have disposed of this question in our discussion of the legality of the decision and no further comment is deemed necessary.

The appellee has assigned cross-error by which he charges the court with having unlawfully awarded the appellant money with which to pay her attorney for his services in connection with the trial of this cause. The questionable allowance was made as a part of the court's final decree which the appellant insists cannot be done except "on decreeing a divorce in favor of the wife or refusing one on application of the husband." Section 3-1216, Burns' 1933 (Supp.). As the court did not decree a divorce in favor of the wife nor refuse one on application of the husband in the present case, the appellee contends the court's decree is unlawful insofar as it provides for a fee for the appellant's attorney.

In *Hart* v. *Hart* (1929), 90 Ind. App. 220, 168 N. E. 492, the court flatly holds that when a decree of divorce is granted the husband on his application, no allowance can be made in the final order for attorney fees. While we do not challenge this decision as a correct construction of the statute involved, we feel that there are insufficient facts disclosed in the opinion to warrant us in considering it controlling in the instant case. The statute expressly provides for allowance to the wife of suit money and attorney fees

*pendente lite* and the court's power to enter interlocutory orders so providing cannot be questioned. The appellant applied for such an order months before final judgment and upon hearing her application the court ordered the appellee to "pay unto Ernest E. Dillon the sum of Two Hundred (200) Dollars as a *partial* allowance for his services as attorney for the defendant in said cause." (Our emphasis.) It is evident that the court was unable to fix a reasonable fee so far in advance of a trial that, on the issues involved, might require much of the attorney's time and attention and reserved final action until the matter could be intelligently determined. The order for attorney fees was made *pendente lite* and the balance due was fixed by final decree. The statute should be given a liberal and practical construction and this procedure, we think, is within its purview. *State ex rel.* v. *Superior Court of Madison County* (1940), 216 Ind. 641, 25 N. E. (2d) 642.

We find no error and judgment is affirmed.

NOTE.—Reported in 64 N. E. (2d) 806.