## WAID *v.* WAID

[No. 17,488.   Filed June 7, 1946.   Rehearing Denied
October 3, 1946.]

*W. B. Edmonds, Arph M. Hall,* and *Orin L. Brown,* all of Terre Haute, for appellant.

*Hilliary & Shafer,* of Terre Haute, for appellee.

CRUMPACKER, J.—In this case the appellee sought and obtained a divorce from the appellant on a complaint

charging cruel and inhuman treatment. The sole question presented challenges the sufficiency of the evidence to sustain the decision of the court. The appellee contends that a specification of error in a motion for a new trial "that the decision of the court is not sustained by sufficient evidence" is inappropriate and presents no question. Such is the law only where the decision complained of is wholly negative. *Ayres* v. *Lucas* (1945), 116 Ind. App. 431, 63 N. E. (2d) 204; *Wadler* v. *Mogul Rubber Corporation* (1945), 116 Ind. App. 152, 61 N. E. (2d) 472. In the present case the appellant complains of the affirmative action of the court in decreeing a divorce on the appellee's complaint and the challenged specification of error is not only proper but necessary to present any question as to the sufficiency of the evidence to sustain the court's decision.

The problem of determining whether the evidence in a given case supports a decision that the conduct of the offending spouse constitutes "cruel and inhuman treatment" is rendered difficult by the fact that there is no exact inclusive and exclusive definition of "cruel and inhuman treatment" that can be used as a standard yardstick. This court said in *Foster* v. *Foster* (1922), 79 Ind. App. 345, 138 N. E. 360: "The courts have not attempted to frame an exact and all-inclusive definition of 'extreme and repeated cruelty,' but generally content themselves with determining whether the facts in the particular case in question constitute such cruelty or not. 9 R. C. L. 335, and cases there cited. In the same text it is laid down as the modern rule, that whether the offending spouse has been guilty of legal cruelty is a pure question of fact, to be determined from all the circumstances of the case." It may be said further that in the solution of

the question courts will not confine themselves to the consideration of any one particular act or set of acts, because they recognize that there are many matters which by themselves are not sufficient to constitute legal cruelty, but which may do so when taken together. 17 Am. Jur., Divorce and Separation, § 49, p. 174. It also is settled beyond controversy that cruel and inhuman treatment which will justify the granting of a divorce includes mental as well as physical cruelty. *Ringenberg* v. *Ringenberg* (1942), 110 Ind. App. 290, 38 N. E. (2d) 870. *Mendenhall* v. *Mendenhall* (1946), 116 Ind. App. 545, 64 N. E. (2d) 806.

With these principles of law in mind we have examined the transcript in this case with care and find evidence of frequent and vehement use of obscene and abusive language by the appellant toward the appellee in the presence of their minor child and others. She repeatedly charged the appellee with improper relations with his female customers and accused innocent women, in the appellee's presence, of carrying on affairs with him. She frequently told him that he meant nothing to her beyond a source of income. On several occasions her conduct about the house became so violent that the neighbors complained to the extent that the appellee was compelled to move his family elsewhere. She seems to have had little conception of the standard of living to which she was limited by the appellee's income and when he remonstrated against her extravagance she had periods of emotional instability which sometimes lasted two or three months, during which she cursed and nagged the appellee constantly. The over-all character of her conduct for many years was such that finally life with her became unbearable and separation resulted on April 29, 1944.

On the other hand there is evidence in the record on which the court might have found that the appellant's conduct can be attributed to mental illness of an emotional or neurotic type. On one occasion the appellee placed her in a Christian Science Home in St. Louis where she remained about four months. Six or seven years ago she submitted to a voluntary commitment to a hospital in Evansville and remained there about six months under the treatment of a psychiatrist. On May 19, 1944, 20 days after this action was commenced, she was adjudged insane by the Vigo Superior Court and committed to the Logansport State Hospital, where she remained until May 22, 1945, when she was found to be of sound mind and released. While she was so confined this action remained pending on the docket of said court, but after her discharge it was brought to trial.

On this state of the record we cannot interfere with the judgment of the court below. We think there is evidence to sustain the court in its finding that the appellant's conduct was cruel and inhuman. Whether such conduct was that of a legally responsible person or excusable by reason of insanity, thus furnishing no grounds for divorce, was also a question of fact for the trial court to determine. We cannot say, without weighing the evidence and substituting our judgment for that of the trial court, that these issues were decided erroneously. That, of course, we are not permitted to do.

Judgment affirmed.

Hamilton, C. J., not participating.

NOTE.—Reported in 66 N. E. (2d) 907.

### DISSENTING OPINION.

ROYSE, J.—I cannot agree with the majority opinion in this case. I am of the opinion the record discloses facts which show conclusively as a matter of law appel-

lant was insane at the time she did the things of which appellee complains.

As stated in the majority opinion, appellee instituted this action on the ground of cruel and inhuman treatment. Appellee's complaint alleges the parties "lived and cohabited together as husband and wife until the 29th day of April, 1944, upon which date they separated and have since lived apart." There was one son who, at the time the complaint was filed, was about sixteen years of age. The acts of cruelty charged in the complaint are that appellant quarreled, nagged, cursed and humiliated appellee in public, and that she was extravagant.

In the case of *Baker* v. *Baker* (1882), 82 Ind. 146, appellant sought a divorce from her husband on the ground of nonsupport. The facts disclosed the husband had for several years been confined in the insane hospital and during such time had wholly failed to support appellant. The trial court denied the divorce. Our Supreme Court, in an opinion by Judge Byron K. Elliott, which has been frequently quoted with approval in many jurisdictions, after pointing out insanity was not a ground for divorce, stated: "There is no merit in the argument that the statute requires that a divorce be granted in all cases where the husband fails to provide for the wife. The statute was not meant to apply to cases *where the inability to make provision arises from mental or physical disease.*" (My emphasis.)

Unless authorized by statute, insanity or other mental incompetency arising after marriage is not cause for divorce. 27 C. J. S. 593, § 49. In 17 Am. Jur. 267, § 230, it is stated: ". . . an insane person should not be held responsible for acts of cruelty while insane, and if insanity itself after marriage is no cause for divorce, nothing which is a consequence of it can be."

Neither the complaint nor the facts in this case bring it within § 3-1201, cl. 8, Burns' 1933 (Supp.), providing upon what conditions divorce may be granted for incurable insanity. Therefore, I believe this court, in determining this case, is bound by the long established ruling precedent of our Supreme Court in the case of *Baker* v. *Baker, supra,* which is supported by the weight of authority in other jurisdictions.

If the record did not conclusively indicate that the acts of the appellant (which are set out in the majority opinion) were the result of insanity, I would agree they were sufficient to sustain the decision of the trial court. However, I believe the facts as set out in the majority opinion are themselves sufficient to establish as a matter of law that because of her mental condition appellant was not responsible for her conduct. An examination of the record discloses other facts which confirm this opinion. The record discloses that on May 11, 1944, twelve days after this action was commenced, there was filed in the Vigo Superior Court an action to have appellant declared insane. Two physicians were appointed to examine her and report thereon to the court, which they did on the 17th of May. On the 19th of May, 1944, she was adjudged insane and ordered committed to the Logansport State Hospital. It is further disclosed that the conduct of which appellee complains commenced about six months before their child was born. Appellee testified that what he termed her tantrums or temper spells would last for varying periods of from three to six months. Then she would be normal and agreeable for a time. The record discloses there were frequent reconciliations between the parties.

The record to my mind clearly indicates appellee believed appellant's conduct was caused by mental illness because on two or three occasions prior to the time

she was committed to the Logansport Hospital he sent her to institutions which provided care for persons suffering from mental illness. Appellant testified it has not been her intention to mistreat or be cruel to appellee. She said if she ever became abusive or used profane language it was at a time when she was mentally and physically ill. I think it significant that appellee did not deny the truth of this testimony. There is absolutely no evidence of misconduct of any kind by appellant since her discharge as cured from the Logansport Hospital.

The facts in this case are much stronger than in the well-reasoned case of *Walker* v. *Walker* (1925), 140 Miss. 340, 42 A. L. R. 1525, where the court, after reviewing cases from many jurisdictions, stated:

> "In the case at bar, the husband seeking the divorce from his wife fixes the time within the period within which the offending wife was decreed to be insane, or so immediately before as to make it reasonably certain that the act was the result of insanity, and not an habitually cruel and inhuman act of a sane person, and likewise that it was not the wilful and obstinate act of a sane person.
>
> "Conceding then that the facts set out constitute habitually cruel and inhuman treatment in view of the statements above, we must say that the court below erred in awarding a divorce in this cause."

Even if it could be inferred from the record (which I do not concede), that at the inception of appellant's alleged offenses she was mentally responsible, the evidence would not sustain the decision because there was condonation of such prior acts. While I recognize that if the promise, which is the consideration for condonation, is broken, the original offense is revived, this does not apply where the promissor is insane at the time the promise is broken. In this case I believe the evidence leads only to the conclusion the final separation was

brought about by conduct of appellant when insane. Therefore, I believe the judgment of the trial court should be reversed.

NOTE.—Reported in 66 N. E. (2d) 907.