SMITH *v.* SMITH

[No. 19,251. Filed September 20, 1960.]

*C. Ellis Deibel,* of Jeffersonville, and *Robert R. Kelso,* of New Albany, for appellant.

*Chester V. Lorch, Basil H. Lorch, Jr., and Lorch & Lorch,* of New Albany, for appellees.

,MYERS, J.—This is an action for divorce originally filed by the appellee, the plaintiff below, in the Clark Circuit Court, against the appellant, defendant below. On application of the appellee, the cause was transferred to the Floyd Circuit Court on change of venue, where it was tried and determined.

Appellee's complaint prayed that he be granted a divorce from appellant upon the grounds therein alleged. The appellant filed an answer in two paragraphs,

the second paragraph being a cross-petition for divorce from the appellee and praying for alimony in the sum of $15,000. An answer was filed to this cross-petition and the matter was at issue. Upon trial the appellant was granted a decree of divorce from appellee upon her cross-petition, and judgment was rendered disposing of property between the parties. Appellant filed her motion for a new trial, based upon the grounds that the decision or finding of the court was not sustained by sufficient evidence and that the decision of the court was contrary to law. This motion was overruled, and the only error assigned is the overruling of the motion for a new trial.

The evidence reveals that both appellant and appellee were residents of Clark County, Indiana. They were married on November 20, 1935, and separated on January 28, 1958. There was evidence of cruel and inhuman treatment on the part of appellee toward appellant. Neither of the parties question the facts upon which the trial court granted the divorce. The main question concerns the property, both real and personal, involved in the case and the court's disposition of it. The parties owned real estate, being a house and two lots in Clarksville, as tenants by the entireties. Appellant placed a valuation of $10,000 on this property, and a real estate appraiser said that its current market value at the time of trial was $11,000, while appellee claimed it was worth $15,000. Furnishings in the house were appraised by appellee at $2,500, while appellant stated they were worth only $500.

Appellee worked for the B. & O. Railroad Company. He was injured at work and laid off for about a year because of his injuries. The railroad company paid him $8,000 as a settlement. With this money appellee bought United States Savings Bonds, registering them in the

joint names of him and his wife. They were put into a safety deposit box, but removed by him when they separated. He claimed that the bonds at the time of trial were worth $7,407.20. Appellant claimed that appellee had purchased an additional $1,900 of bonds, which she said he had in his possession. Appellee denied this. They each had paid-up insurance policies in the amount of $1,000. There was a conflict over the amount of his pay for the year 1957, he claiming that it was $5,200 and she claiming that it was $6,200. He admitted that he could make $400 a month. He had a 1951 automobile in his possession.

Appellant contended that the two lots on which their house was built belonged to her before marriage, and that after they were married they each contributed $500 to build the house, she borrowing her $500 from her father, putting up her insurance policy as collateral security. She stated that she borrowed $1,950 from a Savings and Loan Association and used the money to build the house. Later she had the property transferred from her name to their joint names as tenants by the entireties. She likewise claimed that she had provided most of the furnishings which went into the house.

As a result of hearing the evidence and testimony introduced at the trial, the court made the following findings and decree on May 28, 1958:

"Comes now the plaintiff in person and by his Attorneys, Lorch and Lorch, and comes also the defendant in person and by her Attorney, C. Ellis Deibel. The defendant by her attorney files her cross-complaint herein, which reads as follows: (here insert). And the plaintiff by his attorneys files his answer to said cross-complaint, which reads as follows: (here insert). And it appearing to the Court that this cause has been and remained upon the Civil Docket of this court for more than sixty days past and being set for a day is now submitted

to the court for hearing and trial without the intervention of a jury. And the Court having heard the evidence and being duly advised in the premises finds that the allegations of the defendant's cross-complaint are true and that she is entitled to a decree of divorce from the plaintiff on her said cross-complaint.

"The Court further finds that the property rights of the plaintiff and defendant should be settled in the following manner:

"1. The plaintiff is to pay the defendant the sum of Thirty-seven Hundred and Three and 60/100 Dollars ($3703.60), which represents one-half of the amount of the United States Savings Bonds now in the plaintiff's possession.

"2. The defendant is to be declared the owner of the household furniture and furnishings now in her possession.

"3. The defendant is to retain a paid up life insurance policy in her name.

"4. The defendant is to pay an outstanding account at Stewart's Dry Goods Company in Louisville, Ky.

"5. The plaintiff is to retain and be declared the owner of certain United States Savings Bonds now in his possession after the payment to the defendant of the sum of Thirty-seven Hundred and Three and 60/100 Dollars ($3703.60).

"6. The plaintiff is to retain the proceeds of his paid up life insurance policy.

"7. The plaintiff is to retain the automobile now in his name and personal effects and tools now in defendant's residence.

"8. The real estate owned by the parties at No. 109 South Oak Street in Clarksville, Clark County, Indiana, is declared held as tenants in common, and the Court appoints Keith Briscoe as appraiser, the defendant appoints James W. Applegate as appraiser and the plaintiff appoints Donald E. McCartin as appraiser who are to appraise the said real estate and submit their appraisals to the Court within thirty days from the date hereof. After the appraisals are submitted either the plaintiff

or defendant shall have the right to buy or sell his or her interest to the other party. The parties shall divide the cost of the appraisal fifty-fifty. If the parties cannot agree then the court will appoint a Commissioner to sell the real estate at public sale for an amount equal to the average of the three appraisals mentioned above, and the net proceeds, after expenses are paid, to be divided one-half each to the plaintiff and defendant.

"IT IS, THEREFORE, CONSIDERED, ADJUDGED AND DECREED BY THE COURT that the bonds of matrimony existing between the plaintiff and defendant be dissolved and that the defendant be granted an absolute divorce from the plaintiff on her cross-complaint herein.

"IT IS FURTHER CONSIDERED AND ADJUDGED BY THE COURT that the plaintiff pay to the defendant the sum of Thirty-seven Hundred and Three Dollars and Sixty Cents ($3703.60), which represents one-half of the amount of the United States Savings Bonds now in the plaintiff's possession.

"IT IS FURTHER CONSIDERED AND ADJUDGED BY THE COURT that the defendant be declared the owner of the household furniture and furnishings now in her possession.

"IT IS FURTHER CONSIDERED AND ADJUDGED BY THE COURT that the defendant retain a paid up life insurance policy in her name.

"IT IS FURTHER CONSIDERED AND ADJUDGED BY THE COURT that the defendant pay an outstanding account at Stewart's Dry Goods Company in Louisville, Kentucky.

"IT IS FURTHER CONSIDERED AND ADJUDGED BY THE COURT that the plaintiff be declared the owner of certain United States Savings Bonds now in his possession after the payment to the defendant of the sum of Thirty-seven Hundred and Three Dollars and Sixty Cents ($3703.60).

"IT IS FURTHER CONSIDERED AND ADJUDGED BY THE COURT that the plaintiff retain the proceeds of his paid up life insurance policy.

"IT IS FURTHER CONSIDERED AND AD-JUDGED BY THE COURT that the plaintiff retain the automobile now in his name and personal effects and tools now in defendant's residence.

"IT IS FURTHER CONSIDERED AND AD-JUDGED BY THE COURT that the real estate owned by the parties at No. 109 South Oak Street in Clarksville, Clark County, Indiana, is declared held as tenants in common, and the Court appoints Keith Briscoe as appraiser, the defendant appoints James W. Applegate as appraiser and the plaintiff appoints Donald E. McCartin as appraiser who are to appraise the said real estate and submit their appraisals to the court within thirty days from the date hereof. After the appraisals are submitted either the plaintiff or defendant shall have the right to buy or sell his or her interest to the other party. The parties shall divide the cost of the appraisal fifty-fifty. If the parties cannot agree then the court will appoint a Commissioner to sell the real estate at public sale for an amount equal to the average of the three appraisals mentioned above, and the net proceeds, after expenses are paid, to be divided one-half each to the plaintiff and defendant.

"IT IS FURTHER ORDERED BY THE COURT that the plaintiff pay the costs of this action, which costs the court finds have been paid."

In her argument appellant claims error based on three points. First, appellant claims that the court erred by failing to award her alimony. She argues that the trial court made an attempted property settlement, but did not see fit to make an award of alimony to appellant, and that such was an abuse of discretion. Appellant claims that she had devoted her time during the marriage in caring for her home and family; that she never worked during this time outside her home and family; that she is now an elderly woman who has always relied upon her husband for support and is faced with the prospect of providing for herself. She

argues that her economic situation was not considered by the court, and that alimony should have been provided to take care of her in the future.

Appellant cites §3-1217, Burns' 1946 Repl., which reads as follows:

"The court shall make such decree for alimony, in all cases contemplated by this act, as the circumstances of the case shall render just and proper; and such decree for alimony, heretofore made or hereafter made, shall be valid against the husband, whether asked for in the petition or given by the judge on default."

Appellant also cites §3-1218, Burns' 1946 Repl. (1959 Supp.), which reads in part as follows:

"The court shall fix the amount of alimony and shall enter a judgment for such sum, and specify the character and method of payment, which in his discretion he deems to be just and proper under all of the evidence, including any valid separation agreement which may have been introduced into evidence. . . . Any property, real, personal or mixed, owned as joint tenants or as tenants by the entireties by the parties to the divorce action which shall not be expressly included in and covered by the decree of divorce shall, upon the rendition of such decree, vest in such parties equally as tenants in common."

Although the word "shall" is used in these statutes in regard to fixing the amount of alimony, it is not required that the trial court make an allowance of alimony. It has been held that the word relates only to the amount of alimony when the court deems it proper to allow it. *Ralston* v. *Ralston* (1942), 111 Ind. App. 570, 41 N. E. 2d 817. It is well known to be the law in Indiana that a court may adjust property rights between the parties in a divorce proceeding without awarding alimony. *Smith* v. *Smith et*

*al.* (1954), 124 Ind. App. 343, 115 N. E. 2d 217. Therefore, neither the statute nor common law in Indiana makes it obligatory upon the trial court in a divorce proceeding to allow alimony. *Wallace* v. *Wallace* (1953), 123 Ind. App. 454, 110 N. E. 2d 514, 111 N. E. 2d 90.

Also, our courts have stated many times that the amount of alimony to be awarded in a divorce case is within the sound discretion of the trial court and will not be disturbed upon appeal unless it is apparent that there has been an abuse of discretion. *Cornwell* v. *Cornwell* (1940), 108 Ind. App. 350, 29 N. E. 2d 317; *McHie* v. *McHie* (1939), 106 Ind. App. 152, 16 N. E. 2d 987; *Adams* v. *Adams* (1947), 117 Ind. App. 335, 69 N. E. 2d 632; *Gibble* v. *Gibble* (1942), 111 Ind. App. 60, 40 N. E. 2d 347; *Dissette et al.* v. *Dissette* (1935), 208 Ind. 567, 196 N. E. 684.

The economic situation of appellant and her ability or inability to support herself thereafter was not a proper ground for the trial court to base a determination to allow or not allow alimony, since alimony is not considered in the nature of support in the future for a wife. *Shula* v. *Shula* (1956), 235 Ind. 210, 132 N. E. 2d 612. The general rule has been announced by this court that in a divorce proceeding the wife should receive such sum as would leave her in as good condition as she would be if there had been no divorce and her husband had suddenly died leaving her surviving him. *Glick* v. *Glick* (1927), 86 Ind. App. 593, 159 N. E. 33. However, this has been modified when property is held jointly between the parties as tenants by the entireties. *Shula* v. *Shula, supra.*

Appellant relies heavily upon the case of *Yost* v. *Yost* (1895), 141 Ind. 584, 41 N. E. 11, and *Glick* v. *Glick, supra,* as support for claiming there was an abuse of discretion. In the *Yost* case it was shown that the hus-

band had property of his own valued at between $2,200 and $3,750. In awarding the wife a divorce the court gave her only $100 as alimony. In the *Glick* case there was evidence that the husband had property in the amount of $2,850. In granting the wife a divorce, based on charges of cruel and inhuman treatment, the court gave her no alimony whatsoever. It is apparent in both the aforesaid cases that the trial court abused its discretion in giving only $100 to the wife in the *Yost* case and nothing to the wife in the *Glick* case when the facts clearly warranted otherwise.

In the case before us the record reveals the trial court made what seems to be a very fair attempt to equally divide the property between the two parties. As a result, appellant received an undivided one-half interest in the house and lots, one-half the value of the bonds, the household goods, and her paid-up insurance policy. We see no similarity in the evidence in this case and the *Yost* and *Glick* cases. The trial court did not abuse its discretion in failing to give alimony as such and in its decree dividing the property.

Secondly, appellant argues that the court in effect awarded alimony to the appellee without any statutory authority. She says that in awarding appellee one-half of the United States Savings Bonds, his paid-up life insurance policy, the automobile, his personal effects and tools, and in further ordering the appellant to pay an outstanding account at a dry goods store, it is in effect an award of alimony to appellee. Appellant insists that even though the bonds were purchased from his separate estate, appellee caused the same to be issued payable to himself and his wife jointly and then placed them in a safety deposit box held by them in their joint names, and that it is presumed by so doing he intended to make an absolute gift of at least a one-

half interest in the bonds. Appellant says that the maturity value of the bonds was $9,600, and that the court declared appellee to be the owner of the bonds; that the sum of $3,703.60 ordered paid to appellant is not equal to one-half of the value of the bonds. Thus, she claims that by retaining more than one-half of the maturity value of the bonds, appellee in effect was granted alimony.

In the first place, we are not inclined to approve the broad statement made by appellant in her brief, "that in this state a husband is not entitled to alimony." A search of the law reveals no case, either from this court or our Supreme Court, wherein such a statement is made, either as to holding or dicta. The statute on alimony states in part:

> "In determining the character of the payments of the alimony the court may require it to be paid in money, other property, or both, and may order the transfer of property as between the parties, whether real, personal or mixed and whether title at the time of trial is held by the parties jointly or by one of them individually. . . . Said judgment shall be a lien upon the real estate and chattels real of the *spouse* liable therefor to the extent that it is payable immediately but shall not be such a lien to the extent that it is payable in the future unless and to the extent such decree so provides expressly." Section 3-1218, Burns' 1946 Repl. (1959 Supp.), *supra.* (Our emphasis.)

As can be seen, the statute is very broad and permits the trial court to be very liberal in construing what is alimony, although the same statute provides for periodic payments of alimony, with provision that they may be discontinued or reduced on death or remarriage of the wife. It uses the word "spouse" in referring to the judgment lien on property. As was said in the case of

*Walker et al.* v. *Walker et al.* (1898), 150 Ind. 317, 328, 50 N. E. 68, 71:

"Where the wife proves recreant to her marriage obligations, and has destroyed the marital union by acts of adultery or other gross misconduct, ▮ and her husband is thereby entitled to a decree of divorce, the court granting the same, has the discretionary power, and, under proper circumstances warranting the same, will generally exercise it, and allot to the injured husband such a portion of the property or means which he had settled upon the wife as will place him in the position, to some extent at least, which he would have occupied had the union continued."

This rule was approved in *Mendenhall* v. *Mendenhall* (1946), 116 Ind. App. 545, 64 N. E. 2d 806, and in the case of *Wallace* v. *Wallace, supra.* Therefore, ▮ without holding so, we do not come to the arbitrary conclusion that a husband is not entitled to alimony in this state given the proper surrounding circumstances.

Nowhere in the divorce decree is there any requirement that appellant pay appellee any sum of money out of her own separate estate. There was a conflict ▮ of evidence as to the value of the United States Savings Bonds. The trial court determined they were worth the value which was placed upon them by the appellee, and divided the same in half. We cannot weigh the evidence. As there is evidence of probative value on the question, we must accept the trial court's finding thereon.

We cannot accept appellant's contention that at least one-half of the bonds was a gift to appellant. There was a similar situation in the case of *Mendenhall* v. *Mendenhall, supra,* where the court said as follows (at pages 557, 558 of 116 Ind. App., at page 811 of 64 N. E. 2d):

"In its decree the court ordered the appellant to return to the appellee certain U. S. War Bonds which he had purchased and caused to be issued payable to himself and wife jointly. The appellant contends that, even though the consideration paid for said bonds was the separate property of the appellee, it is presumed that he intended to make her an absolute gift of one-half interest therein. We recognize this to be the general rule, *Radabaugh* v. *Radabaugh, supra,* but such presumption, of course, vanishes in the face of direct evidence to the contrary. The evidence most favorable to the appellee on this point indicates that he never intended his wife to have any present vested interest in the bonds in question, during his lifetime. He bought them out of his separate estate and retained possession of them until they were removed by the appellant from a strongbox without his knowledge and to which box she had gained access without his free-will consent. On these facts we hold that there was no delivery, actual or constructive, and that the appellant had no vested interest in the bonds in controversy and the court was perfectly free to make such disposition of them between the parties as it concluded would meet the ends of justice."

On the basis of the above case, we find no actual or constructive delivery of the bonds to appellant even though appellee did place them in a safety deposit box bearing both their names. See Anno. 25 A. L. R. 666.

Furthermore, in the appellant's cross-complaint, being rhetorical paragraph 4 of Paragraph Two, she admitted that the appellee was the owner of personal property of the estimated value of $12,000, alleging no other jointly-held property except the real estate owned as tenants by the entireties. These admissions made in the pleadings may be taken as true against the party making them, without further controversy or proof. *The New Albany and Vincennes Plank Road Company* v. *Stallcup* (1878), 62 Ind. 345;

Flanagan, Wiltrout and Hamilton's Indiana Trial and Appellate Practice, ch. 35, §1970, page 477. On the basis of the division of property by the trial court in its finding and decree, we do not find that it awarded any alimony to appellee.

For her third point, appellant challenges the decree on the ground that the court, without statutory authority, decreed the parties to be owners as tenants in common of the real estate so owned by them, and ordered the same to be sold by a Commissioner to be appointed by the court should neither party be able to purchase the interest of the other. As has been said further in §3-1218, Burns' 1946 Repl. (1959 Supp.), *supra*, it is now statutory in Indiana that any property owned jointly, including real property owned as tenants by the entireties, by the parties to the divorce action, which is not expressly covered by the divorce decree, shall vest title in the parties equally as tenants in common. In paragraph 8 of the findings and decree of the court it is stated that the real estate owned by the parties is declared held as tenants in common. This part of the judgment is merely declaratory of the law as it now exists, and of itself is not harmful to the appellant. *Gibble* v. *Gibble, supra.*

Pursuant to statute, the trial judge had authority to transfer property as between the parties, whether separately or jointly owned. However, in its decree, the court went further and named three appraisers to appraise the real estate, and gave each party the right to buy or sell his or her interest to the other party after the appraisals were submitted. Further, the court directed that in the event the parties could not agree, it would appoint a Commissioner to sell the real estate and divide the net proceeds, one-half to each party. There is no question but that the court had

the power to order the transfer of the property as *between the parties,* including title to real estate. However, there is no statutory provision empowering the court to divest the parties of their title by forced sale to third persons. This is involuntary partition, and is not authorized by the divorce laws. At the time of a divorce, where there is real property owned jointly by the parties, conditions may be such that they would not wish to sell or dispose of it at that time. They should not be subjected to an arbitrary decision on the part of a divorce court, requiring their property to be sold at an undesired public sale by an unwanted Commissioner. There are other laws on partition which may be used by the parties if they cannot agree on disposal. Furthermore, statutes do not grant such authority to a divorce court. We find this part of the court's decree to be null and void and of no effect. As to the rest of the decree, we find nothing in the record before us which would indicate cause for reversal. Therefore, the judgment is affirmed, subject to the exception taken to rhetorical paragraph 8 of the trial court's findings and decree.

Judgment affirmed.

Ax, P. J., and Cooper and Ryan, JJ., concur.

NOTE.—Reported in 169 N. E. 2d 130.