## SYLVESTER *v.* SYLVESTER.

[No. 18,913. Filed December 19, 1958.]

*Jack B. Kammins,* of Indianapolis, for appellant.

*John G. Call,* of Fortville, *William H. Krieg, Donald A. Schabel* and *Buschmann, Krieg, De Vault & Alexander,* of counsel, all of Indianapolis, for appellee.

BOWEN, J.—This is an appeal from a judgment in an action for divorce brought by appellee against appellant.

Issues were formed on appellee's amended complaint for divorce based upon alleged cruel and inhuman treatment. To appellees' complaint the appellant filed a demurrer and cross complaint in two paragraphs, the first denying the acts of cruel and inhuman treatment. The second paragraph was in the nature of a cross complaint in which appellant asked for a divorce, alleging that appellee refused to give her half of the rental income from the farm, that he did not pay the living expenses, that he drank to excess, and that he left her without cause.

Trial was had by the court on the issues thus formed, and the court rendered judgment that the appellee be

granted an absolute divorce from the appellant cross defendant, and directed the appellant to make a deed for the seventeen acre farm to appellee, and that if she failed, the court directed that a Commissioner be appointed to make such conveyance. The court further ordered and adjudged that the appellant was the sole owner of the property known and designated as 960 English Avenue, Indianapolis, Indiana, and the appellee was ordered to pay the sum of $1100.00 representing the one-half balance of a mortgage thereon, on which mortgage the names of both parties appear, and that upon such payment appellant should be released from such mortgage. Appellant was given the ownership of the household property worth approximately $1,000.00 and appellee was ordered to pay appellant's counsel fees in the amount of $1,000.00.

The appellant filed a motion for a new trial, the grounds of which, that were not waived by a failure to support the same by argument and citation of authority, were that the decision of the court was not sustained by sufficient evidence and was contrary to law. Appellant's motion for a new trial was overruled and this appeal followed.

The appellant and appellee were first married on November 8, 1947, and divorced on February 25, 1953. Upon this first divorce the appellant received alimony of $3,000.00 which she later used as a down payment on a residential income producing property at 960 English Avenue in Indianapolis, Indiana. At this first divorce the decree allowed the appellee to retain title to the seventeen acre farm at Fortville. No appeal was taken from this judgment.

Shortly thereafter, and within a few months after this divorce decree was entered, the appellant told appellee that she would remarry him if he would put

the seventeen acre farm into joint title. He agreed to do this, on condition that she be good to him, take care of him, remarry him, and keep her children by a former marriage away from him.

Before the marriage ceremony on May 1, 1953, appellant and appellee went to an attorney's office in Greenfield and executed deeds placing the seventeen acre farm in joint title. Immediately thereafter the parties were remarried.

About the time of the remarriage the appellee's Fortville property was rented for $75.00 a month. Appellant moved some furniture owned by appellee from the Fortville property to the appellant's home at 960 English Avenue in Indianapolis about two weeks prior to the remarriage. Appellant and appellee lived at this address during their second marriage until March 30, 1954.

Contrary to her promise to appellee, appellant permitted her children to move in with them shortly after the remarriage. Appellant had four tenants to whom she rented rooms leaving only three or four rooms for the family. In these rooms lived appellant, appellee, appellant's children, Russell, Raymond and Georgia, Raymond's wife and three children, and Georgia's paramour, constituting a total of ten persons.

Appellant received about $118.00 per month from her roomers. Appellee took care of the furnace and gave appellant $10.00 per week for his board in addition to what he bought. He also gave her $170.00 for various things during the short time they lived together. Appellant went to work as a maid after the remarriage and earned $27.50 per week. Appellee's advanced age and other physical disabilities made it so that he was unable to work other than to do odd jobs. He helped around the house. He had an income of $75.00

per month from rental of the Fortville property, out of which he paid taxes and insurance on the property. Appellee was given half the crop grown on the tillable portion of the seventeen acres. In the year 1954 this amounted to $400.00.

The record before us shows a situation in which the appellant induced the appellee to remarry her upon certain promises which the court could have reasonably inferred from her subsequent actions that she did not intend to keep, and furthermore, from the record it might be reasonably inferred that appellant agreed to remarry appellee solely for the purpose of getting control of his property. That appellant had no intention of fulfilling her promises can be inferred from the fact that after the remarriage she immediately allowed her children and other persons to move in with them under crowded conditions, contrary to her promise, and that she thereafter ordered appellee to leave the house. A guardianship action was brought by appellant's half brother-in-law, and after the petition for guardianship had been filed, but before appellee had knowledge of it, appellant induced appellee to sign a mortgage for $2800.00 on her property at 960 English Avenue. Appellee was informed of the guardianship proceedings sometime after he had signed the mortgage and after obtaining such knowledge he employed attorneys to fight it. On March 30, 1954, appellant ordered appellee to leave the house and not come back. Thereafter she caused the guardianship petition to be vigorously prosecuted. The action was tried for nearly three days in Probate Court before appellant's attorney conceded defeat and dismissed the petition.

By referring to *Basye* v. *Basye* (1899), 152 Ind. 172, 52 N. E. 797, this court may observe the wisdom and

understanding of some of our illustrious predecessors on this bench in their mature studied deliberations and reflections in performing their duties as judges of a Court of Appeal where the wheels of justice grind slowly with the dripping and cooling water of deliberate thought and human understanding upon the contrariety of life. In such case of *Basye* v. *Basye*, *supra*, Judge Baker, in writing the opinion of the court, stated:

> "Appellee owed appellant the utmost good faith and frankness. There existed between them a relation of special confidence and trust. The principle, also, applies here that whenever the confidence resulting from such a relationship is abused equity will interfere. . . . It was fraud on appellant for appellee to conceal her intention of abandoning him as soon as she got his property.
>
> "That the husband is usually the stronger may be true; but that he is not always the dominating force in the marriage union is known from many well authenticated instances extending from the present time back to the time of Delilah. A few of these have gotten into the law books." Citing *Brison* v. *Brison*, 75 Cal. 525, 17 Pac. 689; *Bartlett* v. *Bartlett*, 15 Neb. 593, 19 N. W. 691; *Turner* v. *Turner*, 44 Mo. 539; *Stone* v. *Wood*, 85 Ill. 603; *Meldrum* v. *Meldrum*, 15 Colo. 478, 24 Pac. 1083, 11 L. R. A. 65.

In this Basye case the parties were husband and wife. There had been small differences between them, and the wife, without the husband's fault, had treated him coldly for a long time. The husband was a dutiful husband, was in love with his wife, and she knew it. He desired to live with her in peace, concord, and affection. Suddenly she became profuse in professions and demonstrations of love, and she promised to be a dutiful and loving wife for the rest of their days. However, this conduct of hers was hypocrisy, since

she intended to defraud him by getting him to deed real estate to her and then desert him. The husband was ignorant of her fraudulent design, and, relying on the apparent sincerity of her actions and promises, he deeded the property to her without consideration other than that their marital relations should continue peaceful and loving. In a few days she abandoned him and filed a suit for divorce. The court held that the husband was entitled to have the deed cancelled for fraud.

From an examination of the entire record in this case there was sufficient evidence of probative value for the court to have determined that appellant ■ was guilty of cruel and inhuman treatment of this appellee, and circumstances are shown which make it impossible for this court to say that the trial court abused its discretion in its award of alimony as between the parties. *Mendenhall* v. *Mendenhall* (1946), 116 Ind. App. 545, 64 N. E. 2d 806; *Ferguson* v. *Ferguson* (1955), 125 Ind. App. 596, 125 N. E. 2d 816; *Cornwell* v. *Cornwell* (1940), 108 Ind. App. 350, 29 N. E. 2d 317; *Heckman* v. *Heckman* (1956), 235 Ind. 472, 134 N. E. 2d 695; *Proctor* v. *Proctor* (1955), 125 Ind. App. 692, 125 N. E. 2d 443; *Wallace* v. *Wallace* (1953), 123 Ind. App. 454, 110 N. E. 2d 514, 111 N. E. 2d 90.

Appellee was clearly entitled on equitable grounds to have the title to the seventeen acre farm restored to him by reason of the fraudulent representa- ■ tions of appellant in inducing appellee to place this property in joint title with her. *Walker* v. *Walker* (1898), 150 Ind. 317, 50 N. E. 68; *Mendenhall* v. *Mendenhall, supra.*

For the reasons given herein the decision of the trial court is sustained by sufficient evidence and is

not contrary to law and the court did not err in over-ruling appellant's motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 154 N. E. 2d 747.