JAMES WELLINGTON *v.* JOYCE WELLINGTON.

[No. 2-1272A142.  Filed December 11, 1973.  Rehearing denied January 8, 1974.  Transfer denied May 21, 1974.]

*Mehl, Mehl & Beeson,* of Goshen, *Frank E. Spencer,* of Indianapolis, for appellant.

*Joseph A. Noel, Noel, Noel, Williams & Scruggs,* of Kokomo, for appellee.

SULLIVAN, J.—Appellee Mrs. Wellington was granted a divorce from appellant Dr. Wellington on July 9, 1970. The decree of divorce contained a provision that Dr. Wellington pay alimony in the sum of $345,000 in monthly installments of $1250.00, together with child support in the sum of Two Hundred Dollars ($200.00) per month for the two minor children of the parties. No appeal was taken by either party from that judgment. The alimony and child support were negotiated between the parties with the aid of their respective

lawyers. The Miami Circuit Court granted the divorce and entered the prepared written decree which had been approved by Dr. Wellington in person as evidenced by his signature on the decree and Mrs. Wellington by her attorney. Neither Dr. Wellington nor his attorney attended the divorce hearing.

On July 8, 1971, one day short of a year after the decree was entered, Dr. Wellington filed a motion to vacate the alimony provision of the decree. The motion alleged that defendant's default and the judgment entered thereon were procured by "duress and misrepresentation." Dr. Wellington claimed that during the settlement negotiations, he agreed to the terms of the decree in consideration of Mrs. Wellington's promise that she would be a better mother to the two children, and in fear that she might otherwise take the children and flee to another area.

Commencing in October of 1971, Dr. Wellington refused to pay the alimony installments.

On December 10, 1971 Mrs. Wellington filed an affidavit for a contempt citation seeking to invoke the aid of the Miami Circuit Court in enforcing its decree so far as the alimony payments were concerned.

On December 20, 1971, the Miami Circuit Court heard evidence on Dr. Wellington's motion and Mrs. Wellington's petition. The order and judgment of the court from which this appeal is taken was as follows:

"Parties appear in person and by counsel. Evidence is heard and concluded. Court now finds for the Plaintiff and against the Defendant on Defendant's Motion to Vacate and Set Aside Previous Judgment heretofore entered on July 9, 1970 and the Court further finds that the Plaintiff committed no fraud upon the Defendant. The Court further finds that on Plaintiff's Citation of Contempt of Court, for the Plaintiff and against the Defendant and that the Defendant is in indirect contempt of this Court for failure to pay alimony as heretofore ordered by the Court on July 9, 1970. It is therefore ordered, adjudged and decreed by the Court that the order heretofore made by the Court, July 9, 1970, ordering the Defendant to pay alimony in

installment payments, is in full force and effect and that the Defendant is ordered to pay back alimony payments forthwith and to keep current on alimony payments in the future. Punishment against the Defendant for contempt of Court is withheld pending the Appeal of this cause provided that the Defendant file within (15) days of this entry, his Motion to Correct Errors and perfecting his Appeal timely in accordance with the Rules of the Indiana Supreme Court."

It is appellant's contention that the court erred in refusing to vacate the alimony provision of the divorce decree and that further error was committed in utilization of the contempt powers of the court to enforce such alimony provision.

I

## THE COURT BELOW CORRECTLY DENIED APPELLANT'S MOTION TO VACATE THE ALIMONY PROVISION OF THE DIVORCE DECREE

It is appellant's contention that the default divorce judgment which included the alimony provision was procured by fraud and duress in that his wife falsely represented to appellant that in the future she would give better care to their minor children and that she had threatened to take the children and "disappear". While the uncontradicted evidence submitted by appellant upon his Motion to Vacate might give rise to a strong inference that his wife, both before and after the divorce, had not exhibited ideal or even proper motherly care for the children, such evidence would seem more in keeping with a Petition for Modification of the custody portion of the decree. It appears to have little, if any, legal relevance to the propriety of the alimony provision of the divorce decree unless Mrs. Wellington's "promise" to devote more attention to the children constitutes fraud.

It is well settled that in a proceeding to set aside a default judgment, the burden of proof is upon the party seeking relief to establish the fraud alleged in his petition or motion to vacate. *Schepp* v. *Pogue* (1968), 142 Ind. App. 341, 234 N.E.2d 874. The essential elements

of proof with respect to vacating an agreed settlement of litigation are not different from the elements necessary to establish any other action founded upon fraud. *Farm Bureau Mutual Insurance Co.* v. *Seal* (1962), 134 Ind. App. 269, 179 N.E.2d 760. As we recently noted in *Grissom* v. *Moran* (1972), 154 Ind. App. 419, 290 N.E.2d 119, 123:

> "The essential elements of actionable fraud are a material representation of past or existing facts, which representations are false, made with knowledge (scienter) or reckless ignorance of this falsity, which cause a reliance upon these representations, to the detriment of the person so relying."

The key to the matter before us is whether the wife's promise constituted a material representation of an existing fact for as stated in *Martin* v. *Grutka* (1972), 151 Ind. App. 167, 278 N.E.2d 586, 591:

> "It is patently clear under Indiana law that representations upon which an action for fraud can be maintained must be of alleged existing facts, and not upon promises to be performed in the future."

Appellant relies upon *Basye* v. *Basye* (1899), 152 Ind. 172, 175, 52 N.E. 797 wherein the court, in setting aside a deed from the husband to the wife, held:

> "In this case the false representations were made concerning a present fact. Representations may consist in acts as well as words. When appellee caressed her husband, after a long period of coldness, she made a solemn affirmation of present fact just as much as when she told him in words that she loved him and begged his forgiveness of her past indifference. When she caressed him and promised to be a good wife in the future, her promise as well as her kiss was a representation of present fact. A present state of mind is a present fact. Bigelow on Fraud (1888 ed.), 483-4.
>
> *Appellee owed appellant the utmost good faith and frankness. There existed between them a relation of special confidence and trust.* The principle, also, applies here that whenever the confidence resulting from such a relationship is abused equity will interfere." (Emphasis supplied)

To the same effect is *Sylvester* v. *Sylvester* (1958), 129 Ind. App. 168, 154 N.E.2d 747.

The emphasized portion of the above language points up the controlling distinction between the relationship of the husband and wife in the *Basye* case and that of the parties to this litigation.

In *Sachs* v. *Blewett* (1933), 206 Ind. 151, 185 N.E. 856, our Supreme Court analyzed, distinguished and placed in proper perspective the *Bayse* decision. In making that distinction, the court stated:

"It is not alleged that there was any relationship of trust or confidence between the parties, nor are any circumstances shown which would entitle the appellee to place more than ordinary reliance in the promises of the appellants."

At the time of the representations here involved, the parties were adversaries and were negotiating with the help of their respective lawyers, a settlement to the dispute rather than a reconciliation or other transaction dependent upon trust and confidence. Accordingly, we hold that the well established principles of law with respect to fraud are applicable here and that Mrs. Wellington's promises as to future performance do not constitute fraudulent representations.

We further hold that the court below was justified in finding that the wife's "promise" to be a better mother were mere statements of a nebulous intention to try to do better and did not justify appellant's possible reliance thereon as a factual representation certain or probable of accomplishment in the future. There is no evidence that when the representation was made, Mrs. Wellington did not in fact intend to be a better mother. Her later failure, if it be a fact, does not compel a conclusion by the trial court that she falsely and intentionally misrepresented her intention. *Smart and Perry Ford Sales, Inc.* v. *Weaver* (1971), 149 Ind. App. 693, 274 N.E. 2d 718.

Appellant's argument concerning the "duress" which caused his acquiescence in the default decree fails for the reasons heretofore stated. Additionally this argument, as well as the

contention with regard to the wife's "fraudulent misrepresentations", ignores the fact that appellant was fully conversant with his current and prospective financial state[1] and with the terms of the divorce decree and the fact that he specifically approved those terms including the total amount of alimony to be paid and the periodic installments required to satisfy the obligation. See Anno. 5 A. L. R. 823 (validity of separation agreements as affected by fraud or coercion.)

## II

## CONTEMPT POWERS OF COURT IMPROPERLY USED TO ENFORCE ALIMONY PROVISIONS OF DIVORCE DECREE

(A) Alimony Award May Constitute Provision For Maintenance As Well As A Method For Distribution of Property Between Parties

Alimony in Indiana has seemingly become a catchall concept embracing all matters between husband and wife in a divorce proceeding except dissolution of the marital relationship itself and provision for custody and support of minor children. We do not make this observation without due consideration of case law in this state. To the contrary, such is dictated by the confusing, if not confused, pronouncements contained in our body of law. See Note, 45 Ind. L. J. 595. With respect to the precise nature of alimony, we have noted that the cases are in severe disagreement. One line of cases adopts the traditional and majority view. This view is exemplified by *Rariden* v. *Rariden* (1904), 33 Ind. App. 284, 70 N.E. 398 wherein the court stated:

---

1. There is no statute or apparent case authority in Indiana authorizing as in other jurisdictions (see Anno. 18 ALR 2d 10; Nelson, *Divorce and Annulment*, §§ 14.71 and 17.16 [2d ed.]) modification of an alimony judgment unrelated to child support, by reason of changed financial circumstance. *Compare Tobin* v. *Tobin* (1902), 29 Ind. App. 382, 64 N.E. 624 (modification for child support). In any event, however, appellant did not seek modification in the court below upon such grounds.

" 'Alimony' as here used, is purely incidental to a divorce proceeding, and is an allowance out of the divorced husband's estate made to the divorced wife for her support and maintenance."

Simliarly in *Ceiga* v. *Ceiga* (1943), 114 Ind. App. 205, 210, 51 N.E.2d 493, the court stated:

"Alimony is the allowance made by order of court for the maintenance and support of a wife living apart from her husband, whether divorced or not."

In *Wallace* v. *Wallace* (1953), 123 Ind. App. 454, 110 N.E.2d 514, the court noted that it is the duty and obligation of the court to settle and determine the property rights of the parties but acknowledged that a grant of alimony was discretionary. Such case indicates that alimony is not solely a matter of property distribution or settlement. The opinion on rehearing in the *Wallace* case at page 465, 111 N.E.2d 90, lends emphasis to this interpretation:

"We specifically held the order directing the transfer of the property to appellee was not alimony. The finding of the trial court sustains this conclusion. It specifically stated it was made in settlement of the respective property rights of the parties."

And *O'Connor* v. *O'Connor* (1968), 253 Ind. 295, 253 N.E.2d 250 contemplates a continuation of the common law duty of support to the wife *if* the divorce decree so provides. Alimony provisions of a decree bearing aspects of support are not therefore precluded by the generally stated principle that divorce terminates the duty of support.

Another line of cases construes alimony quite differently. In *Shula* v. *Shula* (1956), 235 Ind. 210, 132 N.E.2d 612, the court stated:

"Alimony is awarded in Indiana for the purpose of making a present and complete settlement of the property rights of the parties. It does not include future support for the wife, nor is it intended as a medium for providing financial compensation for injured sensitivities during marriage. The primary factor in fixing the alimony is the existing property of the parties." 235 Ind. 210 at 214

In *Sidebottom* v. *Sidebottom* (1967), 140 Ind. App. 657, 225 N.E.2d 772,[2] the court referred to the *Shula* case and noted that *McDaniel* v. *McDaniel* (1964), 245 Ind. 551, 201 N.E.2d 215 followed the *Shula* case. The *Sidebottom* case quotes the language from *Shula* above set forth. The *McDaniel* case cited in *Sidebottom* observes that "it is the basic concept of alimony that such payment be made in lieu of a wife's right to the continued support of her husband" but quotes from *Shula* exactly as did *Sidebottom*. The *McDaniel* case holds:

> "Neither is a wife entitled to alimony as a method of future support where substantial alimony in lieu of such support is awarded out of the estate of the husband as in the *Shula* case."

*McDaniel* thus seems to hold that a property division in addition to alimony would constitute a double recovery by the wife. This is not so if the property division is made prior to the computation of the amount awarded in lieu of support as alimony. *McDaniel* quite obviously recognizes the "support" aspect of alimony but would appear to hold that such support substitute is afforded by the property distribution made by the court. If we accept this interpretation, alimony as such would be rendered a legal surplusage. If the property distribution takes into consideration all factors, there is no need to render an alimony judgment in addition to property settlement provisions. If as is usual, alimony to be awarded a wife is computed at least in part with regard to the separate properties of the husband and wife, it goes without saying that such factor must be considered only after a determination has been made with respect to the specific property or its value to be set aside to the parties. To do otherwise would, as feared by *McDaniel*, permit a double recovery by the wife, i.e., pro-

---

2. The decision of the Appellate Court was reversed upon other grounds in *Sidebottom* v. *Sidebottom* (1968), 249 Ind. 572, 233 N.E.2d 667. The latter decision was however overruled in *Alderson* v. *Alderson* (1972), 258 Ind. 328, 281 N.E.2d 82.

vision for future support and maintenance premised upon the affluence of the husband but to reduce that affluence by setting over to the wife a portion of the property which comprises it.

It cannot be denied that most divorces involve a distribution of property but do not involve a separate alimony award. When both are present, usually only when the husband is of some means, it is important to delineate the difference between property settlement and alimony. Were it otherwise, alimony, in such instances, could only be awarded as a cash equivalent of property held by the husband which for some reason should remain in his hands, e.g., a sole proprietorship. Property equalization considerations, however, are not dependent upon an award of "alimony." The property distribution itself may be ordered made in cash, in lieu of specific property. There is no need to confuse matters by labeling such award "alimony." *Smith* v. *Smith* (1960), 131 Ind. App. 38, 169 N.E.2d 130 relies upon *Shula* v. *Shula, supra,* for the proposition that alimony is not considered in the nature of future support but notes that "it is well known to be the law in Indiana that a court may adjust property rights between the parties in a divorce proceeding without awarding alimony." Such holding necessarily contemplates that alimony is not solely a property settlement provision.

The creation and growth of the monster in our midst perhaps has been fostered by IC 31-1-12-17, Ind. Ann. Stat. § 3-1218 (Burns 1968), the sole statutory provision prior to September 1, 1973[3] for property allocation between parties to a divorce and which couches such in terms of "alimony":

> "The courts shall fix the amount of alimony and shall enter a judgment for such sum, and specify the character and method of payment, which in his discretion he deems to be just and proper under all of the evidence, including any valid separation agreement which may have been introduced

---

3. Public Law 297 enacted by the 1973 General Assembly, the Dissolution of Marriage Statute, became effective September 1, 1973 and superseded § 3-1218.

into evidence. In determining the character of the payments of the alimony the court may require it to be paid in money, other property, or both, and may order the transfer of property as between the parties, whether real, personal or mixed and whether title at the time of trial is held by the parties jointly or by one of them individually. In determining the method of the payment of the alimony the court may require that it be paid in gross or in periodic payments, either equal or unequal, and if to be paid in periodic payments the court may further provide for their discontinuance or reduction upon the death or remarriage of the wife, and, in his discretion, the court may further provide for such security, bond, or other guarantee as shall be satisfactory to the court for the purpose of securing the obligation to make such periodic payments. Said judgment shall be a lien upon the real estate and chattels real of the spouse liable therefor to the extent that it is payable immediately but shall not be such a lien to the extent that it is payable in the future unless and to the extent such decree so provides expressly. Such amount as shall be awarded, regardless of the character or method of its payment shall be in complete discharge of all the husband's obligation to the wife, but not to his minor children, arising out of the marital or family relationship. In his discretion the court may make such judgment without relief from valuation or appraisement laws. Such judgments as contemplated by this section shall not be assignable and any purported assignment of such a judgment or any portion thereof shall be wholly invalid and unenforceable. Any property, real, personal or mixed, owned as joint tenants or as tenants by the entireties by the parties to the divorce action which shall not be expressly included in and covered by the decree of divorce shall, upon the rendition of such decree, vest in such parties equally as tenants in common."

The most recent example of the "property settlement" approach is *Doner* v. *Doner* (1973), 158 Ind. App. 306, 302 N.E. 2d 511 wherein the First District quoted from *Shula* v. *Shula, supra.* In *Doner,* the wife was awarded household furnishings and an equal share of the equity in real estate. She was also permitted to retain the withdrawn balance of a joint savings account. Relying upon IC 1971, 31-1-12-17, Ind. Ann. Stat. § 3-1218 (Burns 1968), *Doner* went beyond the decision in

*Shula* and held that the property awarded to the wife was "alimony".

Acceptance of that line of cases which construe alimony solely as a settlement of property rights necessarily involves rejection of the traditional and majority view that alimony is at least in part for the purpose of affording the wife in appropriate circumstances a substitute for support and maintenance. In any event, the rejection of a support concept relegates a cash award of alimony to one pigeon hole—a method whereby an equitable property allocation may be made between parties to a divorce without requiring divestment, assignment or transfer by the husband of specific property which he should logically retain.

It is our conclusion in the final analysis that alimony serves a dual purpose—a method to aid in the equitable distribution of property and a method to provide continued maintenance or support if deemed appropriate. It is not necessary as many Indiana cases have done, to theorize the concept into an either/or situation. The concepts are not mutually exclusive.

Whether alimony is the method whereby the property rights of the parties are settled, having no relationship to support; or whether it is solely in the nature of support exclusive of the duty of the court to fix property rights; or a combination of both concepts, our ultimate decision upon the specific issue before us is nevertheless the same.

(B) Notwithstanding Purpose and Nature of Alimony, Judgment Which Merely Adjudicates Amount Due and Sets Forth How Obligation May Be Paid Is Not Enforceable By Contempt Powers of Court

Appellant relies upon *Marsh* v. *Marsh* (1904), 162 Ind. 210, 70 N.E. 154, which held that contempt was not a permissible means of enforcing an alimony judgment. The court there stated:

"The fact that the alimony contemplated by statute is in the nature of an ordinary judgment, which may be enforced by execution, creates a strong implication against the existence of the prior and more drastic remedy of contempt. . . ." 162 Ind. at 212

It is the position of appellee, however, that the holding in *Marsh* was modified by *State ex rel. Roberts* v. *Morgan Circuit Court* (1968), 249 Ind. 649, 232 N.E.2d 871 so as to sanction the use of contempt to enforce an alimony judgment. She refers to *Wilms* v. *Wilms* (1973), 157 Ind. App. 583, 301 N.E.2d 249, wherein the Third District considered the *Roberts* holding and stated:

"This certainly makes an alimony judgment more like a support order at least as to the method of enforcing it."

Quite significantly, however, *Roberts* did not overrule *Marsh*. It merely held that the 1949 amendments embodied in Ind. Ann. Stat. §§ 3-1218 and 3-1219a (Burns 1968), now Ind. Ann. Stat. §§ 31-1-12-17 and 31-1-12-16 (Burns Code Ed., 1973), had "modified the holding of the case." According to the *Roberts* case, the holding of *Marsh* was "that alimony must take the form of a money judgment" and that a "judgment of alimony is not enforceable by contempt proceedings." The "respect" in which the 1949 amendments modified *Marsh* was not in its holding that "judgment for alimony is not enforceable by contempt proceedings", but in its holding that "alimony *must* take the form of a money judgment."

We see nothing in the rationale of *Roberts* which supports the proposition that an alimony award which takes "the form of a money judgment" can be enforced by contempt proceedings.

The *Marsh* case gains some support in *Bahre* v. *Bahre* (1967), 248 Ind. 656, 230 N.E.2d 411, which treated a judgment for attorney fees obtained after issuance of a divorce decree as unenforceable by contempt proceedings. Citing *Marsh* the Supreme Court in *Bahre* noted that generally

money judgments are enforced by execution and that such are not enforceable by contempt. The distinction is well drawn in *Muchliki* v. *Woefel* (1922), 192 Ind. 62, 135 N.E. 177:

> "But there is a marked difference between an order that a sum of money shall be paid to a certain person at or before a certain time, and a general judgment that the plaintiff shall recover a sum named. Even if understood as an order against the appellant for the payment of money, it would be too indefinite and uncertain to be enforced by proceedings for contempt. It does not designate when or to whom the money shall be paid for the use suggested." 192 Ind. 62, 66

The language of the judgments in *Muchliki* and *Bahre* which were held to constitute general money judgments not enforceable by contempt is not significantly different from the language of the alimony award here. The award here considered reads as follows:

> "Plaintiff is further awarded an alimony judgment against the defendant in the sum of Three Hundred Forty-Five Thousand Dollars ($345,000.00), payable for a twenty-three year period at the rate of One Thousand Two Hundred Fifty Dollars ($1,250.00) per month but, provided, however, in the event plaintiff shall remarry, the monthly payment shall be reduced to Seven Hundred Fifty Dollars ($750.00) per month for the remainder of the twenty-three year period, all such payments to cease upon plaintiff's death."

It does not contain words of command. Accordingly, we hold that the alimony provision in the case at bar is governed by the *Marsh* decision.

We further note that a careful reading of *State ex* rel. *Roberts* v. *Morgan Circuit Court, supra,* discloses that Roberts was held in contempt because he failed to comply with an order to make mortgage payments and to pay certain indebtedness of the parties—not because he failed to pay monthly installments of an alimony judgment.

As heretofore noted, the alimony provision in question contains no imperative language—nothing which purports to command. It is not therefore an order sufficiently definite and

certain to be enforceable by the contempt powers of the Court. *Muchliki* v. *Woefel, supra.*

To construe what, in form, is a money judgment, as an order for the purpose of enforcing it by contempt is to violate the rule that "an indefinite, uncertain or ambiguous decree of a court cannot be enforced in a contempt proceeding." *Uservo, Inc.* v. *Selking* (1940), 217 Ind. 567, 572, 28 N.E.2d 61, 63, quoted in *Martinal* v. *Lake O'The Woods Club, Inc.* (1967), 248 Ind. 252, 254, 225 N.E.2d 183. A decree which appears on its face merely to adjudicate the amount owing from the husband to the wife without including therein any direct command of the court to the husband to pay the sum or sums therein mentioned obviously fails to meet the test of clarity and certainty laid down in *Martinal, supra.* It runs counter to the principle of fair play which permeates our system of jurisprudence to hold a person in contempt for violating an order which does not appear to be an order.

The judgment below is affirmed insofar as it denied Dr. Wellington's Motion to Vacate and Set Aside the Judgment of July 9, 1970. The judgment below is reversed insofar as it ordered defendant-appellant punished for contempt.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 304 N.E.2d 347.