WILLSIDEE WHITE, PERSONAL REPRESENTATIVE OF THE ESTATE OF JACK WHITE, DECEASED *v.* BETTE J. WHITE.

[No. 1-875A146. Filed December 30, 1975. Rehearing denied February 17, 1976. Transfer denied August 20, 1976.]

· *D. Bailey Merrill, R. Eugene Johnson, Michael J. Hayden,* of Evansville, for appellant.

*Charles C. Griffith,* of Evansville, for appellee.

LOWDERMILK, J—This appeal arises from the trial court's determination that appellant (White), as the personal representative of the estate of Jack M. White, (Jack) should pay appellee Bette J. White (Bette) the sum of $37,283.34 as the unpaid balance of a prior alimony judgment.

## FACTS

In 1971, Jack, as plaintiff, obtained a divorce from Bette. In settling the property rights of the parties to the divorce, the court awarded Bette certain real and personal property,

including the former home of the parties, which was in Jack's name.

In addition, the court decreed that plaintiff pay to the defendant as "alimony in lieu of property settlement the sum of One Hundred Thousand Dollars ($100,000.00), as follows: Thirty-four Thousand Dollars ($34,000.00) cash, and the sum of Sixty-six Thousand Dollars ($66,000.00), payable at the rate of Six Thousand Dollars ($6,000.00), beginning January 15, 1972, and the sum of Six Thousand Dollars ($6,000.00) each January thereafter, to and including January 15, 1982."

No appeal was taken from the above judgment and Jack paid the amounts stipulated until his death in 1974. Following Jack's death Bette filed a claim against her former husband's estate, alleging the following:

"1. That she obtained a judgment against Jack M. White, now deceased, in the Gibson Circuit Court in Cause No. C-70 341, in the amount of Sixty-six Thousand Dollars ($66,-000.00) which judgment was payable at the rate of Six Thousand Dollars ($6,000.00) per year, commencing January 15, 1972, a copy of which judgment is marked Exhibit 'A', attached hereto and made a part of this claim.

"2. That Jack M. White has paid to claimant the sum of Eighteen Thousand Dollars ($18,000.00) and that there remains wholly due, owing and unpaid on the principal of said judgment the sum of Forty-eight Thousand Dollars ($48,000.00), together with interest thereon at the legal rate."

This claim was disallowed by White, and the matter was then brought before the Vanderburgh Superior Court for determination. After finding that White admitted the fact that $48,000 was not paid on the prior judgment, by reason of White failing to object to or deny Bette's request for such an admission, the court held, in pertinent part, that

". . . Bette J. White is hereby given judgment against the estate in the amount of Thirty Seven Thousand Two Hundred Eighty Three Dollars and Thirty Four Cents ($37,-283.34), together with interest thereon at the rate of eight

percent (8%) per annum from and after date hereof and the Administratrix and Personal Representative of the within estate is directed to pay said claim from the assets of this estate."

It is the above judgment that White presently appeals.

## ISSUES.

White presents essentially two arguments for our consideration.

(1) Whether the unpaid balance of the prior judgment is a valid claim against Jack's estate.

(2) Whether Bette was entitled to summary judgment on her claim.

## I.

It is White's initial contention that the trial court exceeded its statutory authority in awarding alimony as it did. White asserts that the alimony awarded was in fact a series of "periodic" payments, and that the trial court could not properly make such an award.

In the alternative, White also contends that even if the court made a proper award, any future payments would not be a charge upon Jack's estate in the absence of an express declaration by the trial court. Thus, inasmuch as the court did not state that the future payments were a lien upon Jack's estate, or otherwise require security for their payment, White contends that the payments, which she alleges were not due or payable at the time of Jack's death, could not be a valid claim against Jack's estate.

Necessarily drawn into contention by White's arguments are the alimony statutes which were in force when the alimony award was given.

IC 1971, 31-1-12-14 (Burns Code Ed.), being prior Ind. Ann. Stat. Sec. 3-1217, provides:

"Alimony.—The court shall make such decree for alimony, in all cases contemplated by this act, as the circumstances

of the case shall render just and proper, and such decree for alimony, heretofore made or hereafter made, shall be valid against the husband, whether asked for in the petition or given by the judge on default."

In addition, IC 1971, 31-1-12-17 (Burns Code Ed.) being prior Ind. Ann. Stat. Sec. 3-1218,[1] states, in part, that

"The court shall fix the amount of alimony and shall enter a judgment for such sum, and specify the character and method of payment, which in his discretion he deems to be just and proper under all of the evidence, including any valid separation agreement which may have been introduced into evidence. In determining the character of the payments of the alimony the court may require it to be paid in money, other property, or both, and may order the transfer of property as between the parties, whether real, personal or mixed and whether title at the time of trial is held by the parties jointly or by one of them individually. In determining the method of the payment of the alimony the court may require that it be paid in gross or in periodic payments, either equal or unequal, and if to be paid in periodic payments the court may further provide for their discontinuance or reduction upon the death or remarriage of the wife, and in his discretion, the court may further provide for such security, bond, or other guarantee as shall be satisfactory to the court for the purpose of securing the obligation to make such periodic payments. Said judgment shall be a lien upon the real estate and chattels real of the spouse liable therefor to the extent that it is payable immediately but shall not be such a lien to the extent that it is payable in the future unless and to the extent such decree so provides expressly. Such amount as shall be awarded, regardless of the character or method of its payment shall be in complete discharge of all the husband's obligation to the wife, but not to his minor children, arising out of the marital or family relationship. * * *"

We note for purposes of comparison that the second statute quoted above replaced one which provided that the decree for alimony *had* to be in a gross sum, and not for periodic payments, although the court could allow the gross sum to be paid in installments, if proper security was given.

---

1. Both of the above sections were repealed by Acts 1973, P.L. 297, Sec. 3.

∴ We believe that a resolution of the first question in this appeal must rest on a determination of the effect of the above 1949 amendments to the alimony statutes.

Several law review articles and recent opinions have considered the statute here involved, and the case law which developed both before and after its enactment. The consensus of the above writings is that both the statutes and the case law are inconclusive, confusing and contradictory. *See*, Note, *Alimony in Indiana: Traditional Concepts v. Benefit to Society*, 29 IND. L.J. 461 (1953-54); Note, *Indiana's Alimony Confusion*, 45 IND. L.J. 595 (1969-70); *Wellington v. Wellington* (1973), 158 Ind. App. 649, 304 N.E.2d 347.

At the root of all of the confusion is judicial indecision as to the reasons for the award of alimony. Cases may be cited in support of at least two major ideas: first, that alimony is a property settlement; and, second, that alimony is an award for the future support of the wife. In *Wellington v. Wellington, supra,* the court eventually concluded

> ". . . in the final analysis that alimony serves a dual purpose—a method to aid in the equitable distribution of property and a method to provide continued maintenance or support if deemed appropriate. It is not necessary as many Indiana cases have done, to theorize the concept into an either/or situation. The concepts are not mutually exclusive." 304 N.E.2d at 353.

We are of the opinion that the above analysis is correct. The statute set out above allows the trial court to require payment in money or property (both real and personal), and permits the court to order a transfer of jointly or individually held property to satisfy the award. In addition, the court may award "alimony" in any amount, to be paid in a manner selected by the court. We think it is clear that the statute contemplates more than a mere division of property. We are supported in our conclusion by several cases which specifically considered the alimony statute involved.

In *Gray* v. *Miller* (1952), 122 Ind. App. 531, 106 N.E.2d 709, the court stated

"While the foregoing statute is primarily an alimony statute, the legislative intent is apparent to adopt the policy of recognizing the case law which grants broad powers to a divorce court to fully adjudicate the rights of the parties and order the transfer of real estate between the parties in proper cases." 122 Ind. App. at 538.

Similarly, in *Dieterle* v. *Dieterle* (1961), 132 Ind. App. 213, 173 N.E.2d 665, the court quoted from *Gray* in holding that

". . . Since the enactment of said amendment of 1949, it has been consistently held that said Acts, although primarily an alimony statute, recognizes the case law 'which grants broad powers to a divorce court to fully adjudicate the rights of the parties and order the transfer of real estate between the parties in proper cases.' *Gray* v. *Miller* (1952), 122 Ind. App. 531, 538, 106 N.E.2d 709, 712; *Baker* v. *Baker* (1952), 123 Ind. App. 152, 108 N.E.2d 70; *Wallace* v. *Wallace* (1953), 123 Ind. App. 454, 110 N.E.2d 514, 111 N.E.2d 90; *Proctor* v. *Proctor* (1955), 125 Ind. App. 692, 125 N.E.2d 443; *Seward* v. *Seward* (1956), 126 Ind. App. 607, 134 N.E.2d 560."

While we believe it is clear that alimony awards serve a dual purpose, this does not mean that the purposes served should lose distinction. Generally, a division of property is not made for the purpose of providing future income for the spouse, although such may incidentally result. As was recognized in *Wellington* v. *Wellington, supra,* if a property division were to provide for support, alimony as such would be unnecessary. The *Wellington* decision then went on to state that

"It cannot be denied that most divorces involve a distribution of property but do not involve a separate alimony award. When both are present, usually only when the husband is of some means, it is important to delineate the difference between property settlement and alimony. Were it otherwise, alimony in such instances, could only be awarded as a cash equivalent of property held by the husband which for some reason should remain in his hands, e.g. a sole proprietorship. *Property equalization considerations, how-*

*ever, are not dependent upon an award of 'alimony.' The property distribution itself may be ordered made in cash, in lieu of specific property. There is no need to confuse matters by labelling such award 'alimony.'* Smith v. Smith (1960), 131 Ind. App. 38, 169 N.E.2d 130 relies upon *Shula* v. *Shula, supra,* for the proposition that alimony is not considered in the nature of future support but notes that 'it is well known to be the law in Indiana that a court may adjust property rights between the parties in a divorce proceeding without awarding alimony.' Such holding necessarily contemplates that alimony is not solely a property settlement provision." (Our emphasis.)

We find that, in the case at bar, the Gibson Circuit Court's characterization of the award as "alimony" may be incorrect. The decree is in essence a cash distribution in lieu of a disposition of property, and as such was not intended as alimony as we perceive it. However, the crucial question here is not the precise classification of the award, but the method of payment selected. Therefore, we proceed to a consideration of the primary question.

As noted above, the 1949 act replaced a statute which allowed only for gross alimony awards, though such an award could be paid in installments. The two acts are similar to the extent that they state that alimony is payable "in gross." Further, the first sentence of 31-1-12-17, *supra,* states that the court "shall fix the amount" to be awarded, and "enter a judgment for such sum."

Finally, we note that the statute provides for the complete discharge of the husband's marital obligations to the wife by the payment of *"(s)uch amount* as shall be awarded. . . ." (Our emphasis.)

The latter three quotations clearly uphold the trial court's power to award a definite sum of money which is payable *instanter.* See, *Boshonig* v. *Boshonig* (1972), 152 Ind. App. 688, 285 N.E.2d 684.

We find conspicuously absent from the 1949 statute any statement that the gross award may be paid in installments.

However, the statute expressly allows the trial court to select a method of payment which provides for "periodic payments," which may be modified or discontinued upon, at least, the death or remarriage of the wife. Thus, the question is whether the "periodic payments" are truly something new or merely a restatement of the prior option which allowed installment payments of a gross sum. .

We conclude that the "periodic payments" provided for by the statute were intended to be something other than installment payments of a gross sum. We must presume that the Legislature intended each part of the new act to be fully operative, and it is our duty to give effect to each provision whenever possible. *Tinder* v. *Music Operating, Inc.* (1957), 237 Ind. 33, 142 N.E.2d 610. Also, it is well established that in giving the statutory language its plain and ordinary meaning, IC 1971, 1-1-4-1 (Burns Code Ed.) and cases cited, we should not so construe a statute as to willfully and unnecessarily narrow or emasculate its provisions. *Bohannan* v. *Bohannan* (1961), 132 Ind. App. 504, 167 N.E.2d 717, trans. den.

We believe the word "installment" is generally understood to mean a partial payment of a sum certain. While the word "periodic" could be given a similar meaning, we must conclude that in adding the latter term to a statute which deals with the same subject matter as the one replaced, the Legislature intended, at least, to add a new dimension to the power of the trial court in the area of alimony awards. Thus, we hold that the term "periodic payments" refers to an award of an indefinite total sum, to be paid in equal or unequal payments, for an indeterminable period of time. Giving the term such meaning, also allows us to give effect to the language that payments "*if* to be paid in periodic payments" (our emphasis) may be discontinued or reduced "upon the death or remarriage of the wife . . ." It is generally held that an award of alimony in gross is not

subject to modification. *See, Wilms* v. *Wilms* (1973), 157 Ind. App. 583, 301 N.E.2d 249, and cases cited at p. 250. Therefore, were we to construe "periodic" to mean a part payment of a sum in gross, the last-quoted language would be superfluous.

We believe that the provision for periodic payments, as we construe them, recognizes important changes in the tax laws, and those situations where a strict and immediate division of property does not adequately adjust the rights of the parties. See discussion at pages 470, 471 of Note, *Alimony In Indiana: Traditional Concepts* v. *Benefit to Society, supra.*

In reaching the above decision, we have also answered any question as to the nature of the award in the case at bar. The decree states that the award is for $100,000, "in lieu of (a) property settlement," and that installments are due until January 15, 1982. Given the wording of the decree, and our conclusions above, we find that Jack was not ordered to pay, nor was Bette to receive true "periodic" payments.

### B.

The next question to be decided is whether the 1949 act, while adding the option of periodic payments, also removed the option of installment payments of a sum certain. Clearly, the trial court ordered such installments as to part of the "alimony" award, and it must be determined whether such method of payment was proper.

Initially, we note that the new legislation repealed all laws, or parts thereof, which were "in conflict" with the act. Obviously, the 1949 act deals with the same subject matter as the prior 1873 act. However, as our comments above indicate, we believe the new legislation generally served to expand the trial court's power with regard to divorces and property settlements. We find little within the new act which could be interpreted as a narrowing of judicial power.

In reaching a decision on this point we have considered numerous rules of statutory construction, and of special importance here are the concepts of implied repeal and *expressio unius est exclusio alterius.*[2] *See,* 1A Sutherland, Statutory Construction Sections 23.08 - .11 (4th ed. 1972) ; 2A Sutherland, Statutory Construction Sections 47.23 - .25 (4th ed. 1972) ; 26 I.L.E. Statutes, Sec. 119 (1960). While these rules, which are not to be taken as rules of law, have aided us in the decision of this matter, we do not feel it is necessary that we include a discussion of the merits of such rules. Rather, we now state our conclusions based on an application of such rules to the statute before us.

It is our opinion that the 1949 act did not intend to remove the judicial option of requiring installment payments of a sum certain. The act states that the trial judge should ". . . specify the character and method of payment, *which in his discretion,* he deems to be just and proper . . ." (our emphasis), and we do not believe that the retention of the installment option creates any conflict within the statute, or in its application. To deny trial courts this option would substantially reduce their discretionary power, and limit available methods of payment without good cause.

We wish to emphasize, however, that an award of "alimony" is "in gross" whether payable at once or in installments. The provision for payment in installments is in large part an accommodation to the obligor, and does not change the fact that the entire amount awarded is due the spouse. (We do not find, nor has White presented, any authority which would allow us to hold that the method of payment selected in any way alters the nature of a gross award.) Therefore, we find that the court could properly order the gross amount to be partially paid in installments,

2. "The expression of one thing is the exclusion of another." Black's Law Dictionary 692 (4th Ed. 1951).

but that such a requirement could not serve to reduce the ultimate amount due Bette under the decree.

In closing, we note that the wide discretion we perceive embodied within the 1949 act has been retained in the 1973 Dissolution of Marriage Act. *See,* IC 1971, 31-1-11.5-11 (Burns Code Ed. Supp. 1975).

Although we have found that the award in the case at bar was "in gross," we must now decide whether the unpaid installments of the award constitute a valid claim against Jack's estate.

White presents us with numerous cases which state that certain alimony payments cease with the death of the person liable therefor. However, these cases are cited on the premise that the payments to Bette were "periodic" in nature. Thus, in light of our conclusions above, we do not find such authority persuasive.

White also contends that the future payments are not a charge upon Jack's estate because the decree does not "expressly" provide that said payments are a lien upon the assets of Jack's estate. It is true that the statute clearly provides that

> "Said judgment shall be a lien upon the real estate and chattels real of the spouse liable therefor to the extent that it is payable immediately *but shall not be such a lien to the extent that it is payable in the future unless and to the extent such decree so provides expressly.*" (Our emphasis.) See also, *Baxter* v. *Baxter* (1964), 138 Ind. App. 24, 195 N.E.2d 877.

And, we agree that the divorce decree in this case plainly does not "expressly" provide that the judgment, to the extent that it is payable *in futuro,* is a lien upon Jack's real estate and chattels real. However, this finding does not negate the existence of what we have found to be a gross award of alimony. That the judgment did not create a lien for the unpaid balance of the award does not

mean that the obligation created by reason of the final judgment is destroyed.

Thus, we hold that the trial court was correct in finding that White erred in disallowing Bette's claim and in granting judgment on said claim.

For purposes of this appeal, the only effect that the trial court's failure to create a lien on Jack's estate could have is that Bette must now press her claim as a general creditor of Jack's estate, rather than as a secured creditor. *See,* IC 1971, 29-1-14-9 (Burns Code Ed.)

Based on the above conclusions, we further hold that it was not error for the trial court to grant Bette's motion for summary judgment. Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 338 N.E.2d 749.