Larry WILSON b/n/f Dorothy J. Wilson, Deborah Kinder b/n/f June Kinder and Gilberta Lindsey and All Others Similarly Situated, Appellants (Plaintiffs Below),

v.

Wayne A. STANTON, Administrator, Indiana State Department of Public Welfare, Appellee (Defendant Below).

No. 2–481A111.

Court of Appeals of Indiana, Second District.

Aug. 18, 1981.

Scott R. Severns, William E. Marple, Legal Services Organization of Indiana, Inc., Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen. of Indiana, Gary R. Brock, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Larry Wilson (Wilson), Deborah Kinder (Kinder), and Gilberta Lindsey (Lindsey) appeal the grant of summary judgment against them in their claim against Wayne A. Stanton (Stanton) as Administrator of the Indiana State Department of Public Welfare for personal allowances under Indiana's Medicaid Act, IC 12–1–7–21(b), maintaining that the trial court erred in classifying such allowances as "medical assistance" thereby not payable because of lack of federal financial participation in personal allowance programs.

We reverse.

## FACTS

Wilson, Kinder, and Lindsey are all institutionalized recipients of medical assistance payments under the Medicaid program. They, and the class they seek to represent, all have less than $28.50 per month personal income.

During the year including July 1, 1978 to June 30, 1979, IC 12–1–7–21(b) provided that institutionalized persons eligible for Medicaid "shall be paid a personal allowance in an amount to be established by the State Department of Public Welfare, but in no event less than twenty-eight dollars and fifty cents ($28.50) nor more than thirty-five ($35.00) monthly, which amount shall be exempt from income eligibility consideration ... and may be exclusively used by the recipient for his, or her, personal needs." It is undisputed that this language, if it is not countermanded by other law, requires that the State must pay Medicaid recipients with less than $28.50 monthly personal income enough to raise their personal income to $28.50. No such payments were made.

The plaintiffs' complaint against Stanton was filed in the Marion County Superior Court on May 23, 1979. The case was venued to the Hamilton County Superior Court on July 24. The parties' respective motions for summary judgment were heard on August 6, and summary judgment was rendered in the following manner on October 2:

## FINDINGS OF FACT

1. There is no genuine issue of material fact.
2. Defendant concurs with plaintiffs that I.C. 12–1–7–21(b) (as amended by Acts 1978, P.L. 68, Sec. 2) required defendant to provide plaintiffs with a personal allowance of not less than $28.50 per month from July 18, 1978 to July 1, 1979. The statute reads as follows:

\*    \*    \*    \*    \*    \*

(b) Persons eligible to receive medical assistance under this chapter who are not living in their own homes, but are receiving care in:

(1) hospitals;

(2) skilled nursing facilities; or

(3) intermediate care facilities;

shall be paid a personal allowance in an amount to be established by the state department of public welfare, but in no event less than twenty-eight dollars and fifty cents ($28.50) nor more than thirty-five dollars ($35) monthly, which amount shall be exempt from income eligibility consideration by the state department of public welfare and may be exclusively used by the recipient for his, or her, personal needs.

3.  In answer to interrogatories, the defendant states that $4,795,040.13 reverted to the State of Indiana unspent from the Medicaid Program. Yet, no personal allowance payments were made.

4.  Defendant contends that the Indiana Legislature did not intend for Medicaid funds to be available for payment of the personal allowance in the absence of federal financial participation Defendant's contention is based on the definition of medical assistance found at I.C. 12–1–7–14.9(b). That definition reads as follows:

(b) Such medical assistance includes, subject to the provisions of sections 15.7 and 16 of this chapter, the following:

(1) in-patient hospital services;

(2) licensed nursing home services;

(3) physician's services

(4) out-patient hospital or clinic services;

(5) home health care services;

(6) private duty nursing services;

(7) physical therapy and related services;

(8) dental services performed or prescribed by a licensed dentist;

(9) prescribed laboratory and X-ray services;

(10) prescribed drugs and services when dispensed by licensed pharmacists and when dispensed by legally authorized practitioners;

(11) eye glasses, and prosthetic devices;

(12) optometric services;

(13) diagnostic, screening, preventive and rehabilitative services;

(14) podiatry services;

(15) any other medical care or remedial care recognized under state law;

(16) family planning services except the performance of abortions; and

(17) nonmedical nursing care given in accordance with the tenents [sic] and practice of a recognized church or religious denomination to any individual qualified for assistance under this chapter who depends upon healing by prayer and spiritual means alone in accordance with the tenets and practices of his church or religious denomination. *However, medical assistance, under this subsection does not include any services for which federal participation is not available.* [emphasis added by trial court]

5.  Federal financial participation was not available for the payment of the personal allowance.

6.  The single issue before the Court is whether or not the personal allowance described in I.C. 12–1–7–21(b) (as amended by Acts 1978, P.L. 68, SEC. 2) constituted "medical assistance" as defined in I.C. 12–1–7–14.9(b) and was, therefore, dependant [sic] on federal financial participation.

## CONCLUSIONS OF LAW

\*      \*      \*      \*      \*      \*

3.  Upon careful reading of I.C. 12–1–7–14.9(b) in particular and all of the sections of Title 12, Article 1, Chapter 7 of the Indiana Code pertaining to medical assistance and disabled persons, it is this Court's interpretation that the definition of "medical assistance" found in I.C. 12–1–7–14.9(b) was intended to be broad enough to encompass all pay-

ments described under Chapter 7 pursuant to medical need, remedial care, and personal disability. From the face of I.C. 12–1–7–21(b) (as amended by Acts 1978, P.L. 68, SEC. 2) it is clear that the personal allowance was such a payment.

4. Therefore, defendant was prohibited from making personal allowance payments when federal financial participation was not available just as he would have been prohibited from making any other payment in regard of medical assistance, remedial care, or personal disability under Indiana Code, Title 12, Article 1, Chapter 7, without federal financial participation.

It is therefore ORDERED, ADJUDGED, and DECREED that Summary Judgment be entered in favor of defendant and against plaintiffs.

/s/ Donald E. Foulke

Donald E. Foulke, Judge

Date: October 2, 1980

Hearing was also held on the plaintiffs' motion for certification of their class action under T.R. 23(B)(2); but summary judgment was rendered before the class was certified. The class remains uncertified.

## ISSUES

On appeal, the plaintiffs present two issues:

1. Does the restriction on medical assistance payments apply to the personal allowance program under IC 12–1–7–21(b) (Burns 1979 Supp.)?

2. Did the trial court err in failing to certify the plaintiff class?

Because we remand for further proceedings, we need not reach the second issue.

## DECISION

Because there is no factual controversy whatsoever, our decision is a question of law, purely a technical question of statutory construction.

■ In construing statutes, it is our aim to give effect to as much of the language of the statute as possible, *White v. White,* (1975) 167 Ind.App. 459, 338 N.E.2d 749, and to recognize the plain and ordinary meaning of the words used, if possible. IC 1–1–4–1(1). It is not to be presumed that the legislature intends its enactments to have no effect. *State ex rel. Boger v. Daviess Cir. Ct.,* (1960), 240 Ind. 198, 163 N.E.2d 250. Social legislation in particular will be construed liberally to effect its purpose. *Renwanz v. Review Board of Indiana Employment Security Division,* (1971) 148 Ind.App. 540, 267 N.E.2d 844.

■ The definition of "medical assistance", IC 12–1–7–14.9(a)–(c) covers more than a page and half of Burns Indiana Statutes. "Medical assistance" is defined as "payment to or on behalf of part or all of the cost of medical or remedial services" for seven classes of beneficiaries who are then described. IC 12–1–7–14.9(a).

The kinds of medical services covered by Medicaid are then enumerated in subsection (b):

(b) Such medical assistance includes, subject to the provisions of sections 15.7 and 16 of this chapter, the following:

(1) In-patient hospital services;

(2) Licensed nursing home services;

(3) Physician's services;

(4) Out-patient hospital or clinic services;

(5) Home health care services;

(6) Private duty nursing services;

(7) Physical therapy and related services;

(8) Dental services performed or prescribed by a licensed dentist;

(9) Prescribed laboratory and X-ray services;

(10) Prescribed drugs and services when dispensed by licensed pharmacists and when dispensed by legally authorized practitioners;

(11) Eye glasses, and prosthetic devices;

(12) Optometric services;

(13) Diagnostic, screening, preventive and rehabilitative services;

(14) Podiatry services;

(15) Any other medical care or remedial care recognized under state law;

(16) Family planning services except the performance of abortions; and

(17) Nonmedical nursing care given in accordance with the tenets and practice of a recognized church or religious denomination to any individual qualified for assistance under this chapter who depends upon healing by prayer and spiritual means alone in accordance with the tenets and practices of his church or religious denomination.'

By its terms, the enumerated list is not exclusive; subsection (b) opens with the phrase "such medical assistance *includes* . . . the following" IC 12–1–7–14.9(b). But merely because such a list is not exclusive, it does not follow that nothing is excluded. Under the ancient doctrine of *ejusdem generis*, payments will be classed as medical assistance if they are made for purposes akin to those enumerated in IC 12–1–7–14.9(b). *Thompson v. Thompson*, (1972) 259 Ind. 266, 286 N.E.2d 657. Sutherland, *Statutory Construction*, § 47.17 P. 103.

A survey of the enumerated list persuades us that the legislature intended "medical assistance" to refer only to payments made for the performance of the healing arts, however practiced. IC 12–1–7–21(b), on the other hand, provided that the personal allowance was not to be taken into account at all in determining payments for "medical assistance"; it was intended to be income for the recipients' "personal needs" to spend on clothing, hygiene, or entertainment, as they pleased. A "personal allowance" for "personal needs" is thus distinguishable from the medical assistance program, and therefore not subject to the limitation on the medical assistance program that it need not be provided if "federal financial participation is not available."

Our conclusion that "personal allowance" does not equate with "medical assistance" is borne out not only by the plain meaning of the language of IC 12–1–7–14.9 and IC 12–1–7–21, but by two other factors. One, the language restricting medical assistance to programs for which federal funding was available was already on the statute books when the personal allowance program was passed. To say that the legislature intended the personal allowance program to be

rendered ineffective from the moment of its passage is to say that the legislature intended to enact a pointless statute, a conclusion from which we recoil. *Boger, supra.* Two, the very next session of the legislature amended IC 12–1–7–21 to provide only that institutionalized recipients of medical assistance may *retain* $28.50 of their income, and to omit any reference to *payment* of a personal allowance. IC 12–1–7–21(b) (Burns 1981 Repl.). We presume that the legislature, by changing the wording of a statute, intends to change its meaning. *Bowman v. State*, (1979) Ind.App. 398 N.E.2d 1306. The 1978 session of the General Assembly evidently believed that the statutes then in effect did require that personal allowances be paid to institutionalized Medicaid recipients, and found it necessary to change the statute to provide otherwise.

██ Stanton argues that regardless of the provisions of the statute, no appropriation was made to bring the personal allowance program into effect. Our reading of the appropriations act for fiscal year 1977–78 persuades us otherwise. Acts 1977 P.L. 10(s.s.) § 8. After a list of appropriations for the Department of Public Welfare, the following language appears: "the foregoing appropriations for Personal Service Reimbursement to Counties, for Medicaid current obligations and Medicaid Administration, for Public Assistance and Burials, and for the Work Incentive Program, are for the purpose of enabling the Department of Public Welfare to carry out *all* services as provided in IC 12–1." *Id.* (emphasis added). This would appear to cover the personal allowance program, and we find no language in the appropriations act to contradict this appearance.

The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent herewith.

SHIELDS, J., concurs.

RATLIFF, J. (participating by designation), concurs.